No. 1-96-1095

RON HUBBLE and BARBARANN HUBBLE, )  Appeal from the 

)  Circuit Court of

Plaintiffs-Appellants, )  Cook County.

)

v. )  No. 93 L 09826

)

PAUL O'CONNOR and LYNDA SIMON, )  Honorable

)  Kenneth L. Gillis,

Defendants-Appellees. )  Judge Presiding.

JUSTICE ZWICK delivered the opinion of the court:

Plaintiffs, Ron and Barbarann Hubble, appeal from a grant of summary judgment entered by the circuit court in favor of defendants, Paul O'Connor and Lynda Simon. In their complaint, plaintiffs (sometimes hereinafter, "sellers") sought to recover damages from the defendants (sometimes hereinafter, "purchasers") for an alleged breach of a contract to purchase certain residential real estate. Only count I of the sellers' complaint, that count relating to a breach of contract claim, is before us on appeal.

The facts of this case revolve around a common real estate transaction involving the purchase of a condominium. The written contract at issue contained an attorney review provision which allowed the contract to be voided if either sellers' or purchasers' attorney gave written notice of disapproval within 5 business days after formation of the contract. Although the agreement was signed and tendered by defendant-purchaser Paul O'Connor to seller-plaintiff Ron Hubble, the parties continued to discuss modifications to the agreement past the disapproval period. Two weeks after the disapproval period had expired, purchasers' attorney gave notice that he was invoking the disapproval clause. The parties filed cross-motions for summary judgment and, on February 28, 1996, the circuit court entered judgment in favor of the purchasers and against the sellers.     

The contract is a standardized real estate sales agreement widely used in the Chicago area. The agreement was executed on June 8, 1993. The attorney disapproval clause within the agreement states in pertinent part:

"This contract is contingent upon the approval hereof as to form by the attorney(s) for Buyer and Seller within 5 Business days after Seller's acceptance of this contract. 

Unless written notice of disapproval is given within the time period specified above, then this contingency shall be deemed waived and this contract will remain in full force and effect.

If written notice of disapproval is given within the time period specified above, this contract shall be null and void and the earnest money shall be returned to the Purchaser."

The contract also provides that notice of disapproval may be given or accepted by either of the parties' attorneys.

Although the attorney disapproval clause expired by its own terms on June 15, 1993, the parties agreed on that day to extend the disapproval period to June 22, 1993. This extension was memorialized in a letter from purchasers' attorney to sellers' attorney. Sellers' attorney returned the letter to purchasers' attorney with his signature, formally approving the extension.

On June 17, 1993, purchasers' attorney faxed to the sellers a "proposed Rider to the contract for review and comment." On June 18, 1993, sellers' attorney submitted modifications to the purchasers' proposed rider. On June 21, 1993, purchasers' attorney incorporated the sellers' modifications into the rider and faxed the rider back to sellers' attorney. At this point in time the rider was finalized, but had not yet been executed.

On June 22, 1993, the last day of the contract disapproval period, sellers' attorney telephoned purchasers' attorney to inquire whether purchasers would agree to delaying the possession date. He suggested that the sellers lease the property back from purchasers for a short period of time following the closing. Purchasers' attorney responded by proposing trading the later possession date for a change in the form of the earnest money. Sellers' attorney agreed to the change in a telephone call that same day.

On June 30, 1993, sellers' attorney received the last rider from purchasers' attorney. This rider incorporated all the changes discussed on June 22, 1993, but left the exact possession date blank. Upon receipt of the document, sellers' attorney telephoned the office of purchasers' attorney and was instructed that the possession date to be inserted into the blank was "on or before August 23, 1993." The rider, however, remained unexecuted.   On July 6, 1993, in a letter written to sellers' attorney, purchasers' attorney summarily stated he had "withdrawn attorney approval." He requested that the sellers return to his clients their earnest money.

On August 7, 1993, sellers put the property back on the market. The property ultimately sold at the end of January, 1994, for $315,000, an amount $15,000 less than provided in the June 8 contract. Sellers claimed in their complaint that, in addition to selling the property at a lower price, they were forced by purchasers' breach to incur costs of $15,698.83 in carrying the property from August 1993 through January 1994. 

In seeking summary judgment, sellers asserted that the purchasers had not exercised the attorney disapproval clause in a timely manner, and that the attempt to exercise it on July 6, 1993, was designed simply to exculpate purchasers from their binding contractual obligation to purchase the property. Sellers noted that purchasers conceded during discovery that part of their motivation in having their attorney withdraw his approval for the agreement was because defendant Paul O'Connor had a business opportunity to relocate from Chicago to Budapest, Hungary. Sellers also included in the motion excerpts from the deposition of defendant Lynda Simon in which she stated that, although she had not actually signed the June 8, 1993, real estate agreement itself, she had given permission to Paul O'Connor to sign her name to the contract. An examination of the sales agreement shows that both Lynda Simon and Paul O'Connor are identified as "purchasers." Lynda's signature, however, is followed by the annotation, "by Paul." 

Purchasers filed their cross motion for summary judgment asserting both that the attorney disapproval provision had been properly exercised and that the Illinois Fraud Act (the Statute of Frauds) prevented sellers' from enforcing the agreement. Purchasers based their Statute of Frauds argument on the fact that Lynda Simon had never actually signed the sales agreement and that it had been signed only by Paul. They argued that the contract was therefore incomplete and therefore could not be enforced against either Lynda or Paul. They also argued that the sellers' failure to sign the proposed rider which had been negotiated by the attorneys, but ultimately disapproved by their attorney prior to its execution, precluded contract formation.

As we have noted, the trial court granted purchasers' summary judgment motion and denied sellers' motion. The court ruled that the riders and letters written by purchasers' attorney constituted disapproval and thus voided the contract.

In Illinois, summary judgment is governed by the provisions of section 2-1005 of the Code of Civil Procedure. 735 ILCS 5/2-1005 (West 1994). Summary judgment is recognized to be a drastic remedy which is properly granted only where the movant's right to it is clear and free from doubt. 
Vicorp Restaurants v. Corinco Insulating Co.
, 222 Ill. App. 3d 518, 584 N.E.2d 229 (1991). The purpose of the summary judgment procedure is to determine whether there are any genuine issues of material facts between the parties. 
Vallejo v. Mercado
, 220 Ill. App. 3d 1, 580 N.E.2d 655 (1991). Summary judgment should be granted only if the pleading, depositions, admissions and affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. 
Dash Messenger Service, Inc. v. Hartford Insurance Co.
, 221 Ill. App. 3d 1007, 582 N.E.2d 1257 (1991). 

When all parties move for summary judgment, as here, the trial court is invited to decide the issues presented to it as a matter of law, and entry of summary judgment for one party or the other is proper. 
Maywood Proviso State Bank v. York State Bank & Trust Co.
, 252 Ill. App. 3d 164, 171, 625 N.E.2d 83 (1993). Review in the appellate court of a grant of summary judgment is 
de
 
novo
. 
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90, 102, 607 N.E.2d 1204 (1992).

In this case, the dispositive issues are: (1) whether the parties entered into a valid contract on June 8, 1993, when Ron Hubble and Paul O'Connor signed the sales agreement; (2) if there was a valid contract, whether the parties' subsequent discussions concerning the proposed rider acted as an implied disapproval; and (3) whether the failure of defendant Lynda Simon to sign her own name to the agreement precludes enforcement of the contract against either her or her co-defendant, Paul O'Connor.

We begin our analysis by noting that contract formation requires only the existence of an offer, an acceptance, and consideration. 
La Salle National Bank v. Vega
, 167 Ill. App. 3d 154, 520 N.E.2d 1129 (1988). In addition, to be enforceable, an agreement must be sufficiently definite so that the terms thereof are reasonably certain and able to be determined. 
Kraftco Corp. v. Kolbus
, 1 Ill. App. 3d 635, 274 N.E.2d 153 (1971). Putting aside for the purposes of our initial discussion the Statute of Frauds questions presented, the record establishes that the purchasers submitted an offer to buy the sellers' condominium, promising to pay $330,000. The offer contained a condition subsequent, i.e., if either attorney disapproved of the contract within a certain period, the contract would become void. Sellers accepted the offer on June 8, 1993. Clearly then, at this point in time, a binding contract was formed subject only to a condition subsequent. "[A]n offer that states that it is `subject' to the approval of the attorneys of both parties creates a contract the moment it is accepted." 
Corbin on Contracts
, Rev. Ed., Sec. 3.7, p. 336. The essential terms of the contract were that Ron and Barbarann Hubble would sell unit number 9 at 1616 N. Hudson, Chicago, for $330,000, to be paid by Lynda Simon and Paul O'Connor at closing. 

In pronouncing its ruling, the circuit court found that the writings between the parties after June 8, while "not a flat disapproval or condition approval," were, nonetheless, "a modification." The court noted the basic rule of contract formation, sometimes called the "mirror-image rule," requiring that the acceptance strictly comply with the terms set forth in the offer. See 
Loeb v. Gray
, 131 Ill. App. 3d 793, 799, 475 N.E.2d 1342 (1985). An acceptance conditioned on the modification of terms in an offer generally constitutes a rejection of the offer and becomes a counter-offer that the original offeror must accept before a valid contract is established. 
Loeb
, 131 Ill. App. 3d at 799; 
Ebert v. Dr. Scholls Foot Comfort Shops, Inc.
, 137 Ill. App. 3d 550, 558, 484 N.E.2d 1178 (1985). 

Nonetheless, simply because a communication discusses the possibility of modification does not necessarily mean that the communication is a demand for modification:

"A mere inquiry regarding the possibility of different terms, a request for a better offer, or a comment upon the terms of the offer, is ordinarily not a counter-offer. Such responses to an offer may be too tentative or indefinite to be offers of any kind; or they may deal with new matters rather than a substitution for the original offer; or their language may manifest an intention to keep the original offer under consideration." Restatement (Second) of Contracts, Sec. 39, comment b. 

More fundamentally, this is 
not
 a case involving a question of contract formation. A counter-offer rejects an offer only when made 
before
 a contract is formed. Here, the contract was formed when defendants' offer was accepted by plaintiffs on June 8, 1993. The mirror image rule is therefore not relevant.

Recognizing the clear nature of written terms of the June 8 agreement, purchasers suggest that the parties essentially had an implied covenant that the contract would not become binding until the rider was executed. None of the writings or testimony, however, supports such a conclusion. Moreover, such an implied covenant would directly contradict the express covenant in the attorney disapproval clause that the contract would remain in full force and effect if timely notice of disapproval was not given. Express covenants abrogate the operation of implied covenants, so the allegation of an implied covenant is not permitted to overrule or modify the express agreement of the parties. 
Sol K. Graff & Sons v. Leopold
, 92 Ill. App. 3d 769, 772, 416 N.E.2d 275 (1980). In addition, purchasers are precluded from offering testimony to contradict the terms of the written agreement because, where contract terms are clear and unambiguous, the terms of the written agreement must be given their ordinary and natural meaning, and parol evidence cannot be considered to vary that meaning. See 
Lewis v. Loyola University
, 149 Ill. App. 3d 88, 92, 500 N.E.2d 47 (1986).

Once the contract came into existence on June 8, 1993, the only question regarding its enforceability was whether one of the attorneys would disapprove it within the stated disapproval period. The disapproval clause is unambiguous and we agree with sellers: purchasers' attorney never timely disapproved.

The first letter from purchasers' attorney after the contract was signed and delivered by defendant Paul O'Connor, was dated June 17, 1993. It stated:

"I have enclosed for your review and comment a proposed Rider to the above-captioned contract. Please give me a call to discuss after you have had a chance to review it.

Thank you for your help."

Clearly, this letter did not invoke the attorney disapproval clause. It served merely to request changes to what was, at that time, a binding agreement. 

After most of his suggested changes had been made to the agreement in the form of a proposed rider, purchasers' attorney, on the last day of the attorney disapproval period, June 22, 1993, again drafted a letter to the sellers. This letter stated:

"I would like to propose a final additional provision to the Rider which I previously submitted to you for discussion purposes. 

I would like to add a provision which allows for the earnest money to be paid in the form of a promissory note to your clients in lieu of an actual cash payment during the mortgage contingency period. 

* * * 

I realize that this request is somewhat out of the ordinary, but is necessitated by tax concerns that my clients have.

* * *

I emphasize that the purchasers have applied for the mortgage and have received indications that they will be receiving a positive outcome. The sole reason I am raising this is because of the tax concerns. 

I appreciate your consideration of this. Please give me a call to discuss as soon as it is convenient."

Again, this letter hardly constitutes "disapproval" of the agreement. It does not clearly and unambiguously state that the contract would be disapproved and thereby voided unless the sellers agreed to the proposed modifications. 

In any case, if there is doubt as to what was intended by the purchasers' actions, that doubt is resolved in favor of avoiding a forfeiture of the contract. 
McElvain v. Dorris
, 298 Ill. 377, 379, 131 N.E. 608 (1921); see also 
Restatement (Second) of Contracts
, Sec. 227, comment b ("when it is doubtful whether or not the agreement makes an event a condition of an obligor's duty, an interpretation is preferred that will reduce the risk of forfeiture"). This is because conditions subsequent such as attorney disapproval clauses operate to deny vested rights. Cf. 
In re Estate of Wojtalewicz
, 93 Ill. App. 3d 1061, 418 N.E.2d 418 (1981) (construction of 
in
 
terrorem
 clause in a will). 

The contract in this case specifically stated that "unless written notice of disapproval is given *** the contract will remain in full force and effect." Unquestionably, the option to disapprove the agreement is a powerful right and basic fairness requires that any communication invoking the disapproval right be made clearly and unambiguously. Only after the sellers have notice of disapproval are they free to list the property for re-sale. Correspondingly, were the sellers to invoke the disapproval provision, it would be only after the purchasers had received unambiguous disapproval that they would be able to consider making offers on other residences.
 It would be fundamentally unfair, in our view, to allow one party to give ambiguous disapproval so as to play both sides of the fence, i.e., to argue that a binding contract exists or that no contract exists, depending upon the development of subsequent events.
 

Purchasers rely upon 
Olympic Restaurant Corp. v. Bank of Wheaton
, 251 Ill. App. 3d 594, 622 N.E.2d 904 (1993), for the proposition that "a buyers' attorney properly exercises his right of disapproval of a real estate contract by proposing modifications to it." 
The 
Olympic
 case, however, is readily distinguishable. In 
Olympic
, the sellers' attorney wrote a letter to purchasers' attorney within the disapproval period and stated "I do not approve said contract." 
Olympic
, 251 Ill. App. 3d at 596. That same day, purchasers' attorney wrote to sellers' attorney: "Pursuant to the terms of Paragraph 14, Attorney's Review, please be advised the following modifications should be made to the Contract." 
Olympic
, 251 Ill. App. 3d at 596. As the court in the 
Olympic
 case found, these letters were fair notice by and to each party of the other's intention to invoke attorney disapproval. The language used by the attorneys in 
Olympic
, 
however, is far different than the language at issue in the case 
sub
 
judice
. See also 
Groshek v. Frainey
, 274 Ill. App. 3d 566, 654 N.E.2d 467 (1995)(where attorney unambiguously wrote within the disapproval period, "I hereby withhold my approval of said contract"). 

Summarizing, we find that the writings here did not fairly inform the sellers that the contract would be voided under the attorney disapproval clause if the sellers failed to agree to the purchasers' suggested changes. We therefore find the contract became irrevocable when the attorney disapproval period ended on June 22, 1993. 

We now turn to purchasers' invocation of the Statute of Frauds (740 ILCS 80/2 (West 1994)) as a defense to sellers' contract claims. In 
Prodromos v. Poulos
, 202 Ill. App. 3d 1024, 560 N.E.2d 942 (1990), this court enunciated the following test: "Under the Statute of Frauds, a person cannot enforce a real estate contract unless: (1) there is a written memorandum or note on one or more documents; (2) the documents collectively contain a description of the property and the terms of sale, including price and manner of payment; and (3) the memorandum or note contains the signature of the party to be charged." 
Prodromos
, 202 Ill. App. 3d at 1028. Moreover, the court in 
Prodromos
 stated that "in a contract for the sale of land, an agent may sign the contract only if the authority to do so is in writing." 
Prodromos
, 202 Ill. App. 3d at 1029. 

Even though she had given Paul O'Connor permission to sign her name, it is undisputed that Lynda Simon never signed the contract which was ultimately delivered by Paul O'Connor to the sellers; nor is it disputed that Paul O'Connor had no 
written
 authority to act as Lynda Simon's agent for purposes of purchasing the property. As such, the Statute of Frauds serves as a bar to plaintiffs' claims against Lynda Simon.

Sellers raise equitable estoppel and argue that Lynda Simon should not be permitted to raise the Statute of Frauds. Equitable estoppel is a doctrine that is invoked to prevent fraud and injustice. It arises whenever a party, by his word or conduct, reasonably induces another to rely on his representations, leading that person to change his position so as to be injured. 
Gary-Wheaton Bank v. Meyer
, 130 Ill. App. 3d 87, 95-96, 473 N.E.2d 548 (1984). In support of their estoppel argument, sellers claim that Simon stood silent while her attorney negotiated the terms of the agreement on her behalf, and that they reasonably relied upon the existence of the sales contract to their financial detriment. 

 The test used to evaluate an estoppel claim is whether, considering all the circumstances of the specific case, conscience and honest dealing require that a party be estopped. 
Carey v. City of Rockford
, 134 Ill. App. 3d 217, 218, 480 N.E.2d 164 (1985). In this case, however, we note that sellers failed to plead estoppel in the circuit court as an affirmative counter-defense. Under Illinois law, both estoppel and waiver must be affirmatively pled, or they are waived. 
Dayan v. McDonald's Corp.
, 125 Ill. App. 3d 972, 998, 466 N.E.2d 958 (1984). A defense not properly pleaded is deemed waived even though support for the defense may appear within the evidence. 
M. Loeb Corp. v. Brychek
, 98 Ill. App. 3d 1122, 1125, 424 N.E.2d 1193 (1981). The same waiver rule applies to counter-defenses such as sellers' estoppel claim. Cf. 
Payne v. Mill Race Inn
, 152 Ill. App. 3d 269, 276, 504 N.E.2d 193 (1987). Accordingly, we decline to address sellers' estoppel arguments, finding them to have been waived.
(footnote: 1)
Our determination that the Statute of Frauds precludes the written contract from being enforced against Lynda Simon leaves unresolved only the question of whether the contract may, nonetheless, be enforced against Paul O'Connor individually. Unlike Lynda Simon, O'Connor signed his own name to the June 8, 1993, agreement. 

Sellers' urge us to rely upon the Restatement (Second) of Contracts and hold defendant Paul O'Connor individually liable under the contract, despite the failure of Lynda Simon to sign her own name to the agreement. Section 135 of the Restatement provides:

"Where a memorandum of a contract within the Statute [of Frauds] is signed by fewer than all parties to the contract and the Statute is not otherwise satisfied, the contract is enforceable against the signers but not against the others." Restatement (Second) of Contracts, 2d Sec. 135. 

In his defense, O'Connor cites cases in which courts have held that all vendors must sign a real estate sales contract in order for purchasers to enforce the agreement against any of them. See 
Madia v. Collins
, 408 Ill. 358, 97 N.E.2d 313 (1951); 
Axe v. Potts
, 37 A.2d 572, 574, (Pa. 1944). 

O'Connor's reliance on such cases as 
Collins
 and 
Axe
 is misplaced. Here, O'Connor is not a vendor, but a purchaser. The 
Madia
 and 
Axe
 cases hold merely that those with an undivided interest in property do not have the legal authority to sell the entire property in the absence of written approval from their co-owners. In this case, in contrast, the defective signature is that of a co-buyer, Lynda Simon. Under these facts, where Paul O'Connor signed the agreement in his own name and tendered it to the sellers, there is no reason in either law or logic why he should not be individually bound by its terms. 

For the foregoing reasons, the order of the circuit court of Cook County granting summary judgment in favor of defendant Lynda Simon and against the plaintiffs is affirmed; the order granting summary judgment in favor of defendant Paul O'Connor and against the plaintiffs is reversed. Pursuant to our authority under Supreme Court Rule 366(a)(5), we hereby grant summary judgment in favor of plaintiffs and against defendant Paul O'Connor; we deny  plaintiffs' summary judgment motion against defendant Lynda Simon. The matter is remanded to the circuit court for further proceedings consistent with this opinion.

Affirmed in part; reversed in part and remanded.

GREIMAN, P.J., and QUINN, J., concur.

SUPPLEMENTAL OPINION UPON DENIAL OF REHEARING

JUSTICE ZWICK delivered the supplemental opinion of the court:

Following the filing of our opinion in this matter, plaintiffs, Ron and Barbarann Hubble, filed a timely petition for rehearing. Although in our opinion we found in favor of plaintiffs and against defendant Paul O'Connor, plaintiffs are dissatisfied with our determination that the Statute of Frauds prevents a finding of liability against Paul O'Connor's co-defendant, Lynda Simon. Plaintiffs assert that the opinion mischaracterizes the status of the pleadings in that it implies defendants affirmatively raised the Statute of Frauds as part of their responsive pleadings, but that plaintiffs failed to raise the counter defense of equitable estoppel in their reply pleadings. In fact, as plaintiffs now point out, the Statute of Frauds defense was not raised by defendants until they filed their motion for summary judgment. It was only then that plaintiffs raised equitable estoppel as a counter-defense in their response to the motion, along with a claim that the Statute of Frauds defense had been waived because it was "tardy." Plaintiffs now argue, as they did in their initial briefs, that under such facts defendant Lynda Simon has necessarily waived the Statute of Frauds defense. 

For support of their argument, plaintiffs cite the opinion itself for the proposition that "[a] defense not properly pleaded is deemed waived even though support for the defense may appear within the evidence" (slip op. at 15, citing 
M. Loeb Corp. v. Brychek
, 98 Ill. App. 3d 1122, 1125, 424 N.E.2d 1193 (1981)). They urge that we reconsider our holding and apply the rule of waiver to Lynda Simon's invocation of the Statute of Frauds. We reject plaintiff's waiver claim, as we implicitly did in our original opinion. The rule of waiver is a limitation on the parties, not upon the courts. 
Committee for Educational Rights v. Edgar
, 174 Ill. 2d 1, 11, 672 N.E.2d 1178 (1996). Even though defendant Simon risked a finding of waiver by not affirmatively pleading her Statute of Frauds defense, we note that she 
did fully raise the defense and argued it below in her summary judgment motion. Despite the fact that plaintiffs responded by asserting that her defense was "tardy," the trial court did not find waiver. In such a case, we are unwilling to reverse the trial court's ultimate ruling in favor of Simon. We do find, however, that plaintiff's petition for rehearing deserves further discussion.

In holding that plaintiffs had waived their estoppel counter-defense to Simon's Statute of Frauds claim, we implicitly relied upon the principle that we may 
affirm
 the trial court when its decision is correct for any reason appearing in the record, even if that reason was not affirmatively relied upon by the trial court in reaching its decision. 
People v. Rodriguez
, 187 Ill. App. 3d 484, 489, 543 N.E.2d 324 (1989). On reconsideration, however, we recognize the inherent unfairness of imposing the waiver rule against plaintiffs when defendant Simon did not raise the Statute of Frauds defense in her pleadings, but only in her motion for summary judgment. It is established that, "What is good for the goose is good for the gander." 
PSI Energy, Inc. v. Exxon Coal USA, Inc.
 831 F. Supp. 1430 (S.D. Ind. 1993), reversed on other grounds, 
PSI Energy, Inc. v. Exxon Coal USA, Inc.
, 17 F.3d 969 (7th Cir. 1994). A corollary to this technical legal principle is "What is good for the defendant is good for the plaintiff." Accordingly, we elect to address the merits of plaintiffs' equitable estoppel claim as it relates to defendant Lynda Simon.

Equitable estoppel prevents a party from taking advantage of her own wrongdoing. 
Goodwine State Bank v. Mullins
, 253 Ill. App. 3d 980, 1012, 625 N.E.2d 1056 (1993). The doctrine prevents a party from asserting a right she would have otherwise been able to assert. 
Gorgees v. Daley
, 256 Ill. App. 3d 143, 146, 628 N.E.2d 721 (1993). The ultimate purpose of the doctrine is to prevent fraud or injustice. 
Gorgees
, 256 Ill. App. 3d at 146. "In order to establish equitable estoppel, the plaintiff must show that he was led to detrimentally rely upon the conduct or statements of the defendant and that such reliance was in good faith." 
Pothier v. Chicago Transit Authority
, 238 Ill. App. 3d 702, 705, 606 N.E.2d 531 (1992). 

There are six elements required to make out an equitable estoppel claim: (1) voluntary words or conduct by the estopped party amounting to a misrepresentation or concealment of material facts; (2) actual or implied knowledge of the estopped party that the representations were not true; (3) lack of knowledge of the true facts by the innocent party both at time made or at time acted upon; (4) intent, or a reasonable expectation, on the part of the estopped party that the innocent party would act on the misrepresentations; (5) a reasonable, good-faith, detrimental change of position by the innocent party based on the misrepresentations; and (6) prejudice to the innocent party. 
Augustus v. Estate of Somers
, 278 Ill. App. 3d 90, 100, 662 N.E.2d 138 (1996); 
Estes v. Smith
, 244 Ill. App. 3d 681, 684-85, 614 N.E.2d 469 (1993). 

It is established that "[a] party claiming the benefit of an estoppel cannot shut his eyes to obvious facts, or neglect to seek information that is easily accessible, and then charge his ignorance to others." 
Vaughn v. Speaker
, 126 Ill. 2d 150, 169, 533 N.E.2d 885
 (1988)(Ryan, J., specially concurring), quoting 
Vail v. Northwestern Mutual Life Insurance Co.
, 192 Ill. 567, 570 (1901). Thus, to benefit from equitable estoppel, the plaintiff must have "had no knowledge or means of knowing the true facts." 
Lissner v. Michael Reese Hospital & Medical Center
 182 Ill. App. 3d 196, 207, 537 N.E.2d 1002 (1989).

Here, the record does not establish the elements of equitable estoppel against Lynda Simon. Most fundamentally, there is no evidence that Lynda Simon ever misrepresented or concealed a material fact from the plaintiffs. Rather, the record affirmatively establishes that all of the parties involved in the transaction knew Lynda had not personally signed the sales agreement and that Paul had signed on her behalf. Indeed, the agreement itself contains the notation "by Paul" following Lynda's name on the signature line. Thus, every indication is that 
all
 the parties
, including Lynda, believed that Paul's signing of the agreement would bind Lynda at the time it was signed.
 To this end, Lynda freely admitted in her deposition that she had given Paul permission to sign the agreement. Consequently, the plaintiffs had the same facts available to them as did the defendants regarding the legal effect of the sales agreement. Plaintiffs cannot later blame Lynda because they failed to recognize the consequences of her failure to personally sign the agreement.

Because the record does not establish equitable estoppel, we reject plaintiffs' claim that Lynda Simon's is estopped form raising the Statute of Frauds. We therefore re-affirm the trial court's grant of summary judgment in favor of Lynda Simon and against the plaintiffs. 

For the foregoing reasons, as well as the reasons set out in our original opinion, the order of the circuit court of Cook County granting summary judgment in favor of defendant Lynda Simon and against the plaintiffs is affirmed; the order granting summary judgment in favor of defendant Paul O'Connor and against the plaintiffs is reversed. Pursuant to our authority under Supreme Court Rule 366(a)(5), we hereby grant summary judgment in favor of plaintiffs and against defendant Paul O'Connor; we deny  plaintiffs' summary judgment motion against defendant Lynda Simon. The matter is remanded to the circuit court for further proceedings consistent with this opinion.

Affirmed in part; reversed in part and remanded.

GREIMAN, P.J., and QUINN, J., concur.

FOOTNOTES
1:
Sellers urge that, if we find they have waived their estoppel argument, they be permitted to amend their pleadings to include it as a counter-defense. They note that they may amend their complaint in the appellate court pursuant to the provisions of Supreme Court Rule 362. 134 Ill. 2d R. 134. Sellers have failed, however, to make an application supporting their request, as required by the rule. See 134 Ill. 2d R. 134(a), 134(b).