No. 2--06--0472

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| PRANAV PATEL and JYOTIKA PATEL, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | No. 06--CH--511 |
| | ) | |
| VALERIE McGRATH and HARRIS BANK | ) | |
| HINSDALE, N.A., | ) | Honorable |
| | ) | Bonnie M. Wheaton, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE O'MALLEY delivered the opinion of the court:

The plaintiffs, Pranav and Jyotika Patel, appeal the dismissal of their complaint filed against Valerie McGrath and Harris Bank Hinsdale, N.A. (collectively, McGrath), seeking specific performance of a real estate contract. They argue that a letter they sent under an attorney-approval clause was not a counteroffer and that there was an issue of material fact whether, in violation of that clause, McGrath's attorney disapproved the contract based solely on the purchase price. We determine that the letter, which specifically stated that it was not to be construed as a counteroffer or a revocation, was what it said it was, i.e., not a counteroffer or a revocation. We further determine that there was an issue of material fact whether the contract was later rejected based solely on the purchase price. We reverse and remand.

I. BACKGROUND

On March 11, 2006, McGrath accepted the Patels' offer to buy real estate in Burr Ridge, Illinois. The contract contained an attorney approval clause that provided:

"Attorney Review: The respective attorneys for the Parties may approve, disapprove, or make modifications to this Contract, other than stated Purchase Price, within five (5) business days after the Date of Acceptance. Disapproval or modification of this Contract shall not be based solely upon stated Purchase Price. Any notice of disapproval or proposed modifications(s) by any Party shall be in writing. If within ten (10) business days after the date of Acceptance written agreement on proposed modifications(s) cannot be reached by the Parties, this Contract shall be null and void and earnest money refunded to Buyer upon written direction of the Parties to Escrowee. If written notice is not served within the time specified, this provision shall be deemed waived by the Parties and this Contract shall remain in full force and effect."

Within five business days, the Patels' attorney sent a letter to McGrath's attorney, requesting modifications to the contract that would: (1) require the seller to furnish a survey in not less than five business days before closing, instead of one business day; (2) allow the buyer to terminate the contract and receive a refund of all earnest money in the event of problems with title or title insurance; and (3) add that the seller warranted that there was no senior citizen exemption or freeze associated with the property and that, if one existed, it would not be considered in the proration of real estate taxes. The letter further stated:

"Please be advised that the above modifications should not be construed as a revocation of the current Contract, nor should they be construed as a counter-offer. Should

the foregoing be acceptable, kindly have Sellers sign, or sign on their behalf, in the space

provided below and return an executed copy to my attention."

That same day, McGrath's attorney sent a letter rejecting the modifications and disapproving the

contract. The letter did not give any explanation for the rejection. The property was then relisted

at a price of $1,800,000. The original listing sought $1,299,900. The next day, the Patels' attorney

sent a letter accepting the rejection of the Patels' proposed modifications and demanding specific

performance of the contract.

The Patels filed a complaint seeking specific performance of the contract. They also filed

a motion seeking a temporary restraining order and preliminary injunction. McGrath moved to

dismiss, arguing that the letter from the Patels' attorney rejected the contract and that her attorney

properly disapproved the contract within the review period.

The trial court treated the motion as a motion to dismiss under section 2--619 of the Code

of Civil Procedure (735 ILCS 5/2--619 (West 2004)). It noted that the proposed modifications did

not concern price and found that, regardless of how it was described, the letter from the Patels'

attorney constituted a counteroffer that was not accepted by McGrath. Thus, the court dismissed the

complaint with prejudice and denied the motion seeking a temporary restraining order and

injunction. The Patels appeal.

## II. ANALYSIS

The Patels argue that: (1) the correspondence from their attorney was neither a counteroffer

nor a rejection of the contract, and (2) there was an issue of material fact whether McGrath's

attorney's disapproval of the contract was based solely on the purchase price.

Where a cause of action has been dismissed under section 2--619, the questions on appeal are whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. Doe v. Dimovski, 336 Ill. App. 3d 292, 295 (2003). Interpretation of contract language is a question of law, which we review de novo. Radkiewicz v. Radkiewicz, 353 Ill. App. 3d 251, 256 (2004).

The Patels analyze the effect of the attorney-approval clause by contending that a contract was formed and that the letter from their attorney (pursuant to the attorney-approval clause) invited discussion or clarification of terms instead of rejecting the contract by making a counteroffer. McGrath contends that the correspondence was a counteroffer that rejected the contract.

The parties agree that they entered into a contract; their disagreement is over the effect of the attorney-approval clause, specifically, what action under the clause will negate the contract. We agree that the parties entered into a valid contract and we reject those cases holding that this type of attorney-approval clause renders the contract illusory.

It has been held that a contract containing an attorney-approval clause should be construed as a qualified or conditional acceptance of the terms of that contract. Groshek v. Frainey, 274 Ill. App. 3d 566, 570 (1995); see Anand v. Marple, 167 Ill. App. 3d 918, 920 (1988). Normally, invocation of the attorney-approval clause triggers a rejection of the contract and, at times, a counteroffer. Groshek, 274 Ill. App. 3d at 570. For example, we have held that a letter by an attorney, which did not accept the terms of the contract and proposed modifications, both rejected the contract and became a counteroffer. Olympic Restaurant Corp. v. Bank of Wheaton, 251 Ill. App. 3d 594, 599 (1993).

Here, contrary to <u>Groshek</u> and similar cases, we hold that, pursuant to the reasoning of <u>Hubble v. O'Connor</u>, 291 Ill. App. 3d 974, 980-81 (1997), a contract was formed. McGrath accepted the Patels' offer. Upon that acceptance, a contract was formed. The attorney-approval clause did not render the offer, the acceptance, or the consideration supporting the contract formation in this case illusory; instead, it constituted a condition subsequent within the offer, allowing the parties to do one of three things: "[(1)] approve, [(2)] disapprove, or [(3)] make[1] modifications to" the contract. See <u>Hubble</u>, 291 Ill. App. 3d at 979 (attorney-approval clause constitutes condition subsequent within offer). It further provided that, "[i]f within ten (10) business days after the date of [a]cceptance[,] written agreement on proposed modification(s) cannot be reached by the [p]arties, this [c]ontract shall be null and void." Based on this language, the parties, on advice of their attorneys, could do one of three things: approve the contract, disapprove the contract, or suggest modifications. If modifications were suggested, then the parties had 10 days in which to come to agreement or else the contract would become void.

We note that this is effectively McGrath's position. McGrath argues that the Patels' March 22, 2006, letter accepting her rejection of the proposed modifications and demanding specific performance of the contract was late under the attorney-approval clause. The Patels counter, noting that they tried to communicate with McGrath in a timely fashion but got no response. The Patels argue that, anyway, McGrath's rejection letter precluded their acceptance of the rejection because it wrongfully disapproved of the contract. We agree with the Patels, and we will discuss the effect of McGrath's alleged wrongful disapproval below.

---

[1]Rather than "make," the better term is propose or suggest.

We next examine the effect of the parties' correspondence. The Patels' first letter proposed modifications and stated that it was not to be considered a revocation of the contract or a counteroffer. "[S]imply because a communication discusses the possibility of modification does not necessarily mean that the communication is a demand for modification." Hubble, 291 Ill. App. 3d at 980. This idea is reflected in the Restatement (Second) of Contracts, which states:

"A mere inquiry regarding the possibility of different terms, a request for a better offer, or a comment upon the terms of the offer, is ordinarily not a counter-offer. Such responses to an offer may be too tentative or indefinite to be offers of any kind; or they may deal with new matters rather than a substitution for the original offer; or their language may manifest an intention to keep the original offer under consideration." Restatement (Second) of Contracts §39, Comment b, at 106-07 (1981).

See Hubble, 291 Ill. App. 3d at 980 (stating approval of Comment b).

We find our interpretation of the attorney-approval clause to be further supported by the circumstances of this case. One of the basic purposes of the attorney-approval clause here is to do what comment b of section 39 of the Restatement (Second) of Contracts describes: allow a party to suggest modifications to the contract while keeping the original offer in consideration. (We note that, although the Restatement contemplates that a party make a suggestion to modify the offer before acceptance, here, the offer was already accepted. This difference is insignificant in this situation.) In addition, the purpose of the disclaimer language in the letter is likewise to give effect to the concept embodied in Comment b of section 39 of the Restatement. The letter says it is not a revocation or a counteroffer. That means, therefore, if McGrath does not agree to the modifications, then the "current" contract, expressly not having been revoked, remains in effect.

How does this interact with the attorney-review clause of the "current" contract? We find it to be consistent because the attorney-approval clause provides that modifications can be "made" (the better term would be "proposed" or "suggested" rather than "made," because that is actually what is occurring). If an attorney proposes modifications but agreement is not reached on those proposed modifications, then the contract is void. However, as we explained above, because the letter proposing the modifications expressly stated that it was not a revocation or a counteroffer, the "current" contract remained in effect.

We note that Olympic Restaurant does not compel a different result. There, a similar attorney-review provision was at issue. Olympic Restaurant, 251 Ill. App. 3d at 596. The sellers' attorney sent a letter to the buyer's attorney, disapproving of the contract and proposing modifications. Thereafter, the buyer's attorney sent a letter to the sellers, also disapproving of the contract, proposing modifications, and stating that he could not agree to the sellers' proposed modifications. This court held that, under the terms of the contract there, the written notices of disapproval and proposals of modifications constituted a rejection of the contract and a counteroffer. Olympic Restaurant, 251 Ill. App. 3d at 601. Thus, Olympic Restaurant can be read consistently with our view here, because, despite its purported reliance on the mirror image rule (Olympic Restaurant, 251 Ill. App. 3d at 599), the court held that the buyer's letter was "a rejection of the original contract and a counteroffer" (Olympic Restaurant, 251 Ill. App. 3d at 601). This is an implicit recognition of the well-established rule that "[a] counteroffer rejects an offer only when made before a contract is formed." (Emphasis in original.) Hubble, 291 Ill. App. 3d at 980. Thus, we recognized in Olympic Restaurant that, from the buyer's point of view, a contract had been formed, the buyer rejected the contract, and the buyer then proposed a counteroffer to the seller.

Olympic Restaurant, 251 Ill. App. 3d at 601 (buyer's letter was "a rejection of the original contract and a counteroffer"). We decline to follow Olympic Restaurant, however, to the extent that it relies on the mirror image rule to effectively frustrate use and implementation of an attorney-review provision in a contract.

By the same token, while we do not find Olympic Restaurant to be entirely incompatible with our construction of the attorney-review provision, we find Hubble to provide substantial guidance. Even though the attorney-review provision in Hubble differs from that here (see Hubble, 291 Ill. App. 3d at 977), it contained a clause stating that if the provision were not exercised in a timely fashion, then the contract would remain in full force and effect. Hubble, 291 Ill. App. 3d at 977. The court relied on this clause in determining that the contract was formed and that the request for a modification was just that and not a counteroffer. Hubble, 291 Ill. App. 3d at 980-81. Likewise here, the attorney-review provision contains a similar clause stating that if it is not used to invalidate the contract, then the contract shall be deemed to remain in full force and effect. This overriding intent that the contract remain in full force and effect if the notice of disapproval of the contract is not given suggests that proposed modifications will not disturb the existence of the contract. See Hubble, 291 Ill. App. 3d at 980-81. Accordingly, we find Hubble to be entirely consonant with our construction of the attorney-review provision at issue here.

To summarize, then, we have determined that the attorney-approval clause operates as a condition subsequent and not as a conditional acceptance. Thus, the parties agreed to a valid and binding contract with the right to make proposals for modifications pursuant to the attorney-approval clause. The Patels did so, with the added precaution of specifying in their communication that the

proposals were not to be considered to be a rejection of the contract or a counteroffer, but an invitation to negotiate a variation of the terms of the already-existing contract.

This does not end our inquiry, however. Here, the seller did not just reject the proposed modifications, she also disapproved the contract. This brings us to the issue of the effect of the seller's disapproval.

The Patels next argue that there was an issue of material fact whether McGrath's attorney's disapproval of the contract was based solely on the purchase price. McGrath's attorney did not state a reason for the disapproval, and the house was relisted at a substantially greater price. McGrath argues that her attorney was not required to provide a reason for the rejection and that it is possible that the attorney rejected the contract because of the inquiry about modifying the contract.

It is true that, under an attorney-approval clause, an attorney need not state the reasons for disapproval of a contract. Groshek, 274 Ill. App. 3d at 571. Nevertheless, the attorney may not disapprove the contract for a reason that is prohibited. Here, by the contract's terms, "[d]isapproval or modification of [the] [c]ontract shall not be based solely upon stated [p]urchase [p]rice." The fact that no reason was given for the disapproval, coupled with the relisting of the property at a substantially higher price, raises a question of fact as to what role, if any, the purchase price played in the disapproval. Thus, the trial court erred in dismissing the Patels' complaint.

### III. CONCLUSION

For the foregoing reasons, we reverse the judgment of the circuit court of Du Page County and remand for further proceedings consistent with this opinion.

Reversed and remanded.

HUTCHINSON and ZENOFF, JJ., concur.