THIRD DIVISION
SEPTEMBER 12, 2007

1-05-1622

| | | |
|---|---|---|
| NICHOLAS A. KARRIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant and Cross-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| US EQUITIES DEVELOPMENT, INC.; | ) | |
| U.S. EQUITIES REALTY, INC.; 95th AND STONY | ) | |
| ISLAND I, LLC; 95th AND STONY ISLAND II, LLC, | ) | No. 04 CH 4408 |
| | ) | |
| Defendants-Appellees and Cross-Appellants, | ) | |
| | ) | |
| (Johnny Young, Andres Son and Robert Wislow, | ) | Honorable |
| | ) | David R. Donnersberger, |
| Defendants). | ) | Judge Presiding. |

JUSTICE CUNNINGHAM delivered the opinion of the court:

The plaintiff, Nicholas A. Karris (Karris), appeals from the orders of the circuit court of Cook County granting summary judgment to the defendants-appellants, US Equities Development, Inc, US Equities Realty, Inc., 95th & Stony Island I, LLC and 95th & Stony Island II, LLC (defendants),[1] on counts I and II of his complaint seeking specific performance of a contract for the sale of a developed property (subject property). There were no other counts. Counts I and II, respectively, sought specific performance of sale of the subject property for $25,850,000 and $25,333,000 (98% of $25,850,000). On appeal, Karris contends that the trial court misapplied the law when it granted summary judgment on counts I and II and asks this court to reverse and remand the cause for trial on the merits. The defendants cross-appeal from the order of the trial court denying a prior motion

_____

[1]In their notice of cross-appeal, defendants state that 95th & Stony I, LLC and 95th & Stony II, LLC, were the correct names under which those two entities should have been sued. We will use the names contained in the pleadings and the notices of appeal.

to dismiss count II of the complaint. The defendants contend that the sale of the subject property to a third party mooted Karris's claim for specific performance of his alleged right to control the sale.

BACKGROUND

Our factual summary is based on the parties' pleadings, briefs, affidavits, depositions, and exhibits. In January 1995, World Premier Properties, Inc. (World Premier) and two bank trusts controlled by Karris entered into a purchase agreement (Purchase Agreement). The Purchase Agreement provided that Karris would sell certain real property located at 95th and Stony Island Avenue in Chicago to World Premier and World Premier would develop the property. The Purchase Agreement provided that Karris would receive up to half of the sale proceeds in a deferred payment after the subject property was sold.

In late 1997 and early 1998, World Premier and Karris negotiated an amendment to the Purchase Agreement and finalized the amendment on January 23, 1998. The parties refer to this amendment as the "1998 ROFO Amendment." The 1998 ROFO Amendment modified and replaced the earlier deferred payment plan with a detailed formula to calculate the deferred payment due to Karris. The 1998 ROFO Amendment also provided that, in the event that World Premier desired to sell all or substantially all of the subject property before it paid Karris the balance of the deferred payment, World Premier would offer Karris a right of first offer (ROFO) to purchase the subject property. The price, terms and closing date would be determined by World Premier in its sole discretion. After receiving the ROFO notice, Karris would have 20 days to agree to purchase the subject property or deliver a written counteroffer to World Premier. In the event of a counteroffer, the parties would have an additional 10 days to negotiate the terms of a sale. If the parties still did

2

not agree, Karris would be deemed to have rejected the ROFO, and within 240 days of the failed ROFO negotiation date, the subject property could be sold to a third-party buyer.

After the execution of the 1998 ROFO Amendment but before the closing, 95th & Stony I, LLC (Stony I) and 95th & Stony II, LLC (Stony II), acquired World Premier's interests under the Purchase Agreement and became the owners of the property and the new "Buyer[s]" under the 1998 ROFO Amendment.[2] Stony I and Stony II are owned in part by US Equities. The actual closing of the sale of the vacant land under the Purchase Agreement occurred on November 23, 1998. Thereafter, the defendants developed the property and Stony Island Plaza was built and leased. Pursuant to the closing, Karris received $300,000 in cash and $2.5 million in TIF bonds (City of Chicago "Tax Increment Financing" bonds). Because Karris is only seeking an equitable remedy of specific performance in this case, there is no issue regarding the monetary amount allegedly due Karris for the sale of his vacant land.

On January 8, 2004, Stony I sent the ROFO notice with the base price (purchase price) to Karris to sell certain portions of the subject property to Karris on terms described in the notice. The ROFO notice informed Karris that if he did not exercise his ROFO, the subject property would be sold to a third party. On January 28, 2004, Karris's attorney sent a response letter to Stony I stating that the January 8, 2004 ROFO notice was invalid. However, the letter stated that Karris was willing

---

[2]The defendants allege that Stony II is the owner of a portion of the developed property that was not included in either (1) the ultimately unsuccessful ROFO negotiation process between the parties in this case, or (2) Stony I's subsequent sale of its own portion of the developed property to a third party. Therefore, all actions regarding the sale of developed property in this case were by or on behalf of Stony I.

3

1-05-1622

to purchase the property, or a portion thereof, "subject to a reasonable opportunity to analyze the acquisition, the Project costs and the calculation of the Deferred Purchase Price." This letter further stated that Karris was unwilling to pay the brokerage commission and that "[h]e would be willing to purchase *** at the price of $25,850,000, *minus* the brokerage commission." Stony I treated Karris's January 28, 2004 letter as a counteroffer. Then on February 4, 2004, Stony I sent another letter to Karris with a counteroffer of its own and extended the additional 10-day period under the 1998 ROFO Amendment by two days until February 9, 2004. When Karris did not accept that counteroffer proposal by the deadline, Stony I informed Karris on February 10, 2004, that it considered Karris's inaction as a rejection of Stony I's February 4 counteroffer. Stony I informed Karris that it intended to proceed with a sale to a third party.

Thereafter, on March 11, 2004, Karris filed a two-count complaint against the defendants in the chancery division and recorded a *lis pendens* notice against the subject property.[3] Count I sought specific performance of the sale of the subject property for $25,850,000 from Karris's alleged acceptance of the January 8, 2004 ROFO notice. Count II sought specific performance pursuant to paragraph 13 of the 1998 ROFO Amendment, which would allow Karris to purchase the subject property for $25,333,000 or 98% of $25,850,000. Essentially, the underlying issue in count II was whether Karris or Stony I had the right to market the subject property within 240 days after the ROFO negotiation had failed.

---

[3]On June 4, 2004, the trial court granted Karris's motion to voluntarily dismiss the individual defendants, Robert Wislow, John Young (incorrectly sued as Johnny Young), and Andrew Sun (incorrectly sued as Andres Son) without prejudice pursuant to section 2-1009 of the Code of Civil Procedure (735 ILCS 5/2-1009 (West 2004)).

4

On March 31, 2004, the defendants filed a motion for summary judgment on both counts. On May 18, 2004, the trial court entered an order granting the defendants' summary judgment motion against count I but denied the summary judgment motion against count II. The trial court determined that, under the facts presented, no enforceable contract was formed and therefore Karris had no right to specific performance under count I. Subsequently, on October 22, 2004, the defendants filed their second motion for summary judgment on count II under a new theory that Karris's alleged right to market the subject property within 240 days from the failed ROFO negotiation date had expired on or about October 5, 2004, and therefore the specific performance issue became moot. While waiting for an adjudication on the second motion for summary judgment on count II, on December 20, 2004, the defendants filed a motion to dismiss count II. The defendants stated that the subject property in the case was sold to a third party on December 17, 2004, and the sale rendered Karris's relief under count II moot. The trial court summarily denied that motion to dismiss on February 24, 2005.

On May 6, 2005, after a hearing, the trial court entered an order granting the defendants' second motion for summary judgment on count II. The trial court determined that Karris's alleged right to market the subject property for 240 days from the failed ROFO negotiation had expired on or about October 5, 2004, because Karris failed to take steps to toll the period. The court held that because Karris's alleged right had expired, the specific performance under count II became moot and summary judgment in favor of the defendants was proper.

Karris timely appealed the trial court's granting of the defendants' motions for summary judgment on both counts I and II. As an alternative basis for affirmance, the defendants cross-appealed the trial court's denial of the defendants' earlier motion to dismiss count II. Jurisdiction is

5

proper under Illinois Supreme Court Rules 301 and 303 because final judgment was entered on both counts of the complaint. 134 Ill. 2d Rs. 301, 303.

ANALYSIS

There are essentially three issues in this case: (1) whether the trial court properly granted summary judgment in favor of the defendants on the claim of specific performance of a contract to purchase real property in count I of Karris's complaint where the trial court concluded that the parties failed to agree to terms for Karris's purchase of the developed property; (2) whether the trial court properly granted summary judgment in favor of the defendants on the claim for specific performance of an alleged contractual right in count II of Karris's complaint where the trial court concluded that the alleged right was for a finite period and had expired, rendering the claim moot; and (3) whether the trial court erred in denying the defendants' original motion to dismiss the specific performance claim in count II of Karris's complaint where the trial court concluded that the defendants' selling of the property did not render moot Karris's claim for specific performance of his alleged right to control the sale of the property.

The standard of review of a trial court's summary judgment ruling is *de novo*. Illinois State Chamber of Commerce v. Filan, 216 Ill. 2d 653, 661, 837 N.E.2d 922, 928 (2005). Summary judgment is proper if, when viewed in the light most favorable to the nonmoving party, "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2004). The standard of review of dismissals pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2004)) is also *de novo*.

Williams v. Davet, 345 Ill. App. 3d 595, 598, 802 N.E.2d 1255, 1258 (2003). The reviewing court considers all well-pleaded facts in the plaintiff's complaint as true. American National Bank & Trust Co. v. Thomas, 288 Ill. App. 3d 343, 346, 680 N.E.2d 480, 482 (1997). The trial court's granting of a section 2-619 motion to dismiss is proper only if there exists no set of facts which could entitle the plaintiff to recover. American National Bank, 288 Ill. App. 3d at 346, 680 N.E.2d at 482.

In count I of the complaint, Karris is seeking specific performance on the January 8, 2004 ROFO from Stony I that gave him a right to purchase the subject property for $25,850,000. Karris contends that he accepted the essential terms of the January 8, 2004 ROFO when he responded to the ROFO on January 28, 2004, and agreed to purchase the subject property for the $25,850,000 ROFO price without a broker's commission. In response, the defendants contend that Karris did not accept the January 8, 2004 ROFO and no enforceable contract was formed from it because Karris and Stony I never agreed on the purchase price. The defendants argue that Karris's own assertion that the terms of the January 8, 2004 ROFO were improper or ambiguous due to the inclusion of an unspecified brokerage fee demonstrates that the parties never agreed to terms of the sale. The Illinois Frauds Act provides, in relevant part:

> "No action shall be brought to charge any person upon any contract for the sale of lands, tenements or hereditaments or any interest in or concerning them, for a longer term than one year, unless such contract or some memorandum or note thereof shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized in writing, signed

7

by such party." 740 ILCS 80/2 (West 2004).

Illinois courts have recognized that, to be enforceable, a real estate sale contract must: (1) be memorialized in a written document or documents; (2) contain a description of the property and the sales terms, including price and manner of payment; and (3) bear the signature of the party to be charged. Hubble v. O'Connor, 291 Ill. App. 3d 974, 983, 684 N.E.2d 816, 832 (1997).

A review of the correspondence between the parties makes it clear that there was no real estate sales contract formed between them. The record indicates that Karris did not accept the January 8, 2004 ROFO notice unconditionally. Instead, he made his acceptance conditional on certain factors, including an opportunity to analyze the property and subtraction from the price of a brokerage commission. The subsequent negotiation between Karris and the defendants did not result in a written, enforceable real estate sales contract that contained essential terms. A conditional acceptance is no acceptance. Hubble, 291 Ill. App. 3d at 980, 684 N.E.2d at 830. Rather, the conditional acceptance becomes a counteroffer to the original offeror. Hubble, 291 Ill. App. 3d 980, 684 N.E.2d at 830. At best, both parties were negotiating with counteroffers of their own. "A distinction must be drawn between preliminary negotiations toward an agreement and the actual existence of a final contract." Leekha v. Wentcher, 224 Ill. App. 3d 342, 349, 586 N.E.2d 557, 604 (1991). No contract is formed until an execution and delivery of a formal agreement where the parties' intention is that neither will be legally bound until such execution and delivery of a formal document. Leekha, 224 Ill. App. 3d at 348, 586 N.E.2d at 561.

In this case, there was no final agreement between the parties regarding the ROFO purchase and no valid real estate sales contract was formed from it. First, Karris's January 28, 2004 response

letter did not accept the terms outlined in Stony I's January 8, 2004 ROFO notice. Karris's purported acceptance was conditioned upon a reasonable opportunity to analyze the acquisition. It did not constitute an acceptance of an offer and at best, it was a counteroffer to Stony I by Karris. Second, Karris's January 28, 2004 response was ambiguous regarding the final purchase price because it purportedly lowered the purchase price by an undetermined brokerage amount. In his January 28, 2004 response letter, Karris stated that "[h]e would be willing to purchase *** at the price of $25,850,000, *minus the brokerage commission*." (Emphasis added.) Karris's response was ambiguous because it was not clear whether he was willing to purchase the subject property for $25,850,000 or $25,850,000 reduced by the unspecified broker's commission. There was no agreement between Karris and Stony I regarding the specific purchase price because Stony I did not accept Karris's January 28, 2004 counteroffer. Third and finally, in the same letter, Karris stated that "[t]his proposal *** would be *subject to the execution of a contract* containing customary terms and conditions as is apparently contemplated by the purported ROFO Notice." (Emphasis added.) This statement demonstrates that Karris did not want his January 28, 2004 response to equate to an acceptance of Stony I's January 8, 2004 ROFO notice. It is clear from his statement that Karris did not want a binding and enforceable contract until a document containing customary terms and conditions of the contract was executed by both parties.

The defendants never agreed to Karris's January 28, 2004 response. Rather, on February 4, 2004, the defendants acknowledged Karris's January 28, 2004 letter as an attempted counteroffer, presented a new counteroffer of their own, and asked Karris to either accept or reject the proposed counteroffer by February 9, 2004. Because Karris did not accept the February 4, 2004 ROFO terms

before the offer expired on February 9, 2004, no enforceable real estate contract was formed. Hubble, 291 Ill. App. 3d at 980, 684 N.E.2d at 830. In the absence of an enforceable contract, Karris's claim for specific performance cannot overcome the requirements of the Illinois statute of frauds. Therefore, the trial court was correct in granting summary judgment on count I in favor of the defendants.

In count II, Karris is seeking to enforce his alleged right, under paragraph 13 of the 1998 ROFO Amendment, to market the subject property within 240 days of the lapsed ROFO purchase date. The underlying issue in count II arose from the following sentence in paragraph 13 of the 1998 ROFO Amendment:

> "In the event Seller fails to respond in writing to the ROFO Notice within the twenty (20) day period or rejects, or is deemed to have rejected the ROFO Notice, subject to the time restrictions set forth below, *Seller* shall thereafter have the right to sell such portion of the Project to any party for a purchase price greater than or equal to ninety eight percent (98%) of the Base Price. In the event Buyer fails to enter into an agreement to sell such portion of the Project within two hundred forty (240) days, and close on the sale of the project within three hundred sixty five (365) days, after the expiration of said twenty (20) day period, plus the additional ten (10) day period, if applicable ('ROFO Period') then this ROFO shall survive and Buyer shall again be obligated to notify Seller as set forth herein with respect

to any proposed sale of the project." (Emphasis added.)

Although the trial court's denial of the defendants' first motion for summary judgment is not an issue in this appeal, it is instructive. At that hearing the defendants argued that the second use of the word "Seller" in this sentence was a mutual mistake in drafting and that "Seller" should actually read "Buyer," meaning Stony I or US Equities. Karris, on the other hand, argued that there was no mutual mistake in drafting and that he negotiated this right to market the property in the event of a failed ROFO negotiation. The trial court denied the defendants' first motion for summary judgment on count II because the court reasoned that there was a material factual dispute regarding the alleged mistake in usage of "Seller" and "Buyer" in paragraph 13 of the 1998 ROFO Amendment. After the denial, the defendants filed their second motion for summary judgment on a theory of mootness. The trial court granted the defendants' second motion for summary judgment on count II.

On appeal, Karris contends that his right to market the subject property could not be mooted because the defendants denied his right to market it and affirmatively obstructed exercise of this right. Because the defendants allegedly blocked his ability to market the subject property from the outset of this case, Karris contends he did not have an opportunity to exercise that right. The defendants counter that even if Karris did have the right to market the subject property for 240 days following the failed ROFO negotiation, that right expired on or about October 5, 2004. The defendants argue that because Karris did not exercise his right or take necessary steps to toll the running of the period before the period expired, any question of specific performance pursuant to paragraph 13 of the 1998 ROFO Amendment became moot. Additionally, the defendants argue that Karris presented no evidence that the defendants took any steps to prevent or obstruct Karris from exercising the alleged

11

240-day marketing rights.

Karris also argues that the 240-day period was not running because the defendants' mutual mistake defense was yet to be resolved. However, Karris does not cite any authority to support his contention that the defendants' opposite position necessarily and automatically tolled the running of 240 days. In fact, as the defendants point out, Karris was aware or at least under the belief that the 240-day period was running. The record shows that in Karris's brief opposing the defendants' first summary judgment motion, he asked the court to deny the defendants' motion and set the case for trial because both parties needed an early trial. Karris explained that he needed an early trial because he must act within 240 days.

First, the record shows that except for recording a *lis pendens* notice, Karris did not take additional steps to protect his rights. Karris presents no evidence that he actively sought to market the subject property or solicit potential buyers. Second, Karris failed to ask the trial court to toll or suspend the 240-day period during the pendency of this suit. While Karris alleges that the defendants affirmatively obstructed his right to market the subject property, he is unable to present any evidence that any particular actions taken by the defendants prevented him from exercising his alleged right to market the subject property.

Interestingly, in his deposition, Karris admitted that his alleged right to market the subject property was not exclusive and the defendants were also allowed to solicit sales offers from third parties during the same 240-day period. In this case, that is exactly what happened. After the ROFO negotiation had failed, the defendants received an offer and entered into a real estate sales contract with Principal Life Insurance Company (Principal) on March 16, 2004. Then, on December 17, 2004,

the defendants closed the sale with Principal in accordance with the 365-day window provided in paragraph 13 of the 1998 ROFO Amendment. The sales price of $27,450,000 far exceeded the requirement of 98% of the Base Price of $25,850,000 and satisfied the terms of the 1998 ROFO Amendment. The record shows that throughout the sales process to Principal, the defendants were not surreptitious but instead informed both the trial court and Karris regarding the outstanding sales contract and subsequent sales closing with Principal. Because neither the contractual language in the 1998 ROFO Amendment nor any statutory provision provided for an automatic tolling of the 240-day period during the pendency of this dispute and because Karris did not request tolling or suspension of the 240-day period, we hold that the 240 days began to run when the ROFO negotiation failed on February 9, 2004. As a result, the 240-day period expired on or about October 5, 2004. Thus, the trial court correctly granted the defendants' second motion for summary judgment based on the expiration of Karris's alleged right to market the subject property. Therefore, we affirm the trial court's granting of the defendants' second motion for summary judgment on count II.

Because we have affirmed summary judgment on count II, we need not address defendants' alternative contention concerning the denial of their original motion for summary judgment on that count.

Accordingly, we affirm the judgment of the circuit court of Cook County.

Affirmed.

GREIMAN and THEIS, JJ., concur.