RETTERER, APPELLEE, *v.* BENDER ET AL., APPELLANTS.

(No. 1078—Decided April 8, 1958.)

Mr. J. C. A. Arter, Sr., for appellee.
Mr. Frank G. Gegenheimer, for appellants.

GUERNSEY, J. This is an appeal on questions of law from a judgment of the Common Pleas Court against the defendant in a case wherein the plaintiff, a real estate broker, had sued for a commission claimed due him, the case having been tried to the court without a jury.

It is undisputed that the defendants, brother and sister, the owners of two tracts of land, were approached by the plaintiff who desired to represent them in the sale of their land, that on January 29, 1955, he presented to them two printed forms entitled "Purchase Contract," together with copies thereof. The upper portion of each form was addressed to plaintiff's real estate firm, and opened with the clause: "Through you as agents (I or We) hereby propose and agree to purchase real estate described as follows," etc. Following this clause, in each case, was the balance of the "proposal" with a description of the property and all special terms typewritten in appropriate spaces. In the proposal part of one form the following was included under the heading, "Remarks":

"Sale of this property is subject to the sale of the 106 acres, more or less, also in Waldo Township, now in the name of Irene

and LeRoy Bender. Also subject to the approval of the attorney for the lending financial institution.''

In the proposal part of the other form the following was included under the like heading:

''Sale of this property is subject to the sale of 61.65 acres, more or less, also in Waldo Township, now in the name of Irene and LeRoy Bender.''

When the two contract forms were presented to the defendants, the ''proposal'' part thereof was neither dated nor signed.

It is undisputed also that defendant LeRoy Bender, on January 29, 1955, and defendant Irene C. Bender, on either January 29 or January 31, 1955, signed the latter portion of each of the contract forms, and the copies thereof, the following appearing in typewriting and printing above their signatures and below the blanks for signature following the ''proposal'':

''Sellers reserve the right to sell this farm themselves to person or persons other than the above named brokers have contacted, free from commission. I hereby accept and agree to the above proposition this ....day of ......, 19.., and also hereby agree to pay your firm the regular commission of 5% set by the Marion Real Estate Board for finding the herein purchaser for my property.''

The evidence shows that the plaintiff had a prospective purchaser for one tract in mind on January 29, 1955, but does not show whether the defendants were informed at such time of any specific prospect. In any event, however, after the defendants had signed the documents the plaintiff negotiated with and obtained on January 31, 1955, the signatures of Willis Klingel and Lucilla Klingel to the ''proposal'' for the purchase of the 106-acre tract, and negotiated with and obtained on March 14, 1955, the signatures of Iva E. Frost and Mona J. Frost to the ''proposal'' for the purchase of the 61.65-acre tract. In each case the deposit referred to in the form was made with plaintiff broker.

Plaintiff, or his associate, entered various dates at appropriate places on the contract form, and although there is a dispute as to whether these entries accurately reflect the dates of the various signatures, the dates entered show the relative order of signing. It appears further, from the testimony of one

of the defendants that on March 12th plaintiff communicated with the defendants that he was having trouble getting the purchase price on the 61.65-acre tract and asked them to reduce same; that defendants said they would talk it over; and that on March 14th he called plaintiff's associate and informed him that "we withdrew the contract since they can't get the price" and "because we had decided to sell to each other," but that plaintiff's associate informed the defendant that they couldn't withdraw as "Frost was up here this morning and signed up." It appears further from the evidence that defendants were each delivered fully signed copies of each of the "purchase contracts."

Notwithstanding what had transpired on or before March 14th, and for reasons not shown to have been participated in by the plaintiff, the "sales" of the tracts were never consummated. On the trial of the cause, plaintiff produced evidence to the effect that the purchasers of both tracts were ready, willing and able to complete their part of their agreements which was disputed by the defendants as to the purchasers of one of the tracts.

Defendants' first and second assignments of error are that the court erred in not sustaining defendants' respective motions for judgment made at the close of plaintiff's case and at the conclusion of all the evidence. As will hereinafter appear, these assignments of error are without merit. Defendants' third and fourth assignments of error are, respectively, that the decision of the court is not sustained by sufficient evidence and that it is contrary to law. We will consider these assignments together.

The first issue presented by the pleadings and the evidence is whether purchase contracts were ever executed by and between the respective purchasers and the defendants. Plaintiff has proceeded on the theory that the contract of purchase was complete at the time when signed by the respective purchasers, whereas the defendants claim that such signing constituted the making of an offer by the purchasers which was not thereafter accepted by the defendants.

While it has often been said that in order for the mutual assent necessary for the formation of a contract to exist there must be an offer and acceptance, it seems better to state that assent is usually expressed by an offer and acceptance. 11 Ohio Jurisprudence (2d), 265, Contracts, Section 20; 12 American

Jurisprudence, 524, Contracts, Section 26. The words used by parties in negotiating for a contract therefore derive their primary importance from the standpoint of whether they serve to express and achieve mutual assent rather than whether they constitute an apparent expression of an offer or an acceptance. It is the legal effect of the acts and conduct of the parties which determines whether or not the parties have manifested the mutual assent necessary for the formation of a contract and not the legally conclusive descriptive words which the parties ascribe to their conduct.

It is a basic concept of the law of contracts that a statement which in words purports to be an acceptance shall be given the legal effect of a (counter) offer when its terms depart from the terms of the offer to which it pertains. It is given this legal effect as if the original offer did not exist except to the extent necessary to define the terms of the counter offer. As a means of arriving at mutual assent the reasons are at least equally valid for construing and giving what purports to be a premature acceptance which is explicit in its terms, the legal effect of an offer when the conduct of the parties does not compel a construction to the contrary. We are of the opinion that when the defendants in this case affixed their signatures to the acceptance clause of a "purchase contract" wherein all the terms of the purchase and sale were specified, defendants, in legal effect, made an offer to sell the property described therein on such terms.

To conclude to the contrary would give no effect whatsoever to the signatures of the defendants on the "purchase contracts." We are not disposed so to do for then there would be no apparent reason for the signing of the documents and we believe that "signatures to obligations are not mere ornaments." *Snell* v. *Union Sawmill Co.*, 159 La., 603, 105 So., 728.

We likewise conclude that when the Klingels and the Frosts signed their names to that portion of the purchase contract wherein they "propose and agree to purchase real estate described" on the terms expressed in the purchase contract and delivered same to defendants' agent they, in legal effect, expressed and communicated their acceptance of defendants' offer and completed the manifestation of the mutual assent necessary to the formulation of the contract. There is no question that

defendants' offer as to the 106-acre tract was still outstanding on January 31st when the Klingels signed the purchase contract, and it is apparent from defendants' conduct in attempting to "withdraw the contract" on March 14th that it was the intention and understanding of defendants that their offer as to the 61.65-acre tract was outstanding when the Frosts signed the purchase contract prior to said attempt to withdraw. It is therefore our opinion that as of March 14th all the things necessary for the formulation of the two purchase contracts had been completed.

By the specific terms of each of the contracts the defendants agreed to pay plaintiff's firm the regular commission of 5% for "finding the herein purchaser for my property." It has long been the law of Ohio that where a real estate broker makes a contract with the owner to find a purchaser for his real estate at a commission for his services and pursuant thereto performs such services by producing a purchaser, and the owner enters into a written contract of sale with such purchaser, the broker, in the absence of fraud, is entitled to a commission for his services. In such case, the broker is not required to prove that the buyer was ready, willing and able to consummate the transaction, nor is it a defense that the transaction was never consummated. *Carey, Admr.,* v. *Conn,* 107 Ohio St., 113, 140 N. E., 643; *Rosenthal* v. *City Savings & Loan Co.,* 31 Ohio Law Abs., 236; *Lamb* v. *Bearman,* 97 Ohio App., 273, 125 N. E. (2d), 743; and *Blizzard* v. *Norton,* 71 Ohio Law Abs., 272.

Are there any conditions in the two purchase contracts with which we are here concerned which defeat plaintiff's rights in this respect? The proposal portion of each contract provided that the "sale of this property is subject to the sale" of the property described in the other contract. We are of the opinion that this is a condition subsequent which would relieve the purchaser from his obligation to purchase and the sellers from their obligation to sell in the event a contract for the sale of the other property was not entered into. We cannot believe that the parties intended that a sale must actually be consummated for if such were the case the seller could relieve himself from his obligation under the contract by arbitrarily refusing to perform the other contract. Each contract would, in such case, lack mutuality of obligation and we will not give this condition

such interpretation when a reasonable interpretation will result in contracts having mutuality.

The reservation by the sellers of a right to sell to persons other than those contacted by the broker was the reservation of a right which could only be exercised by the sellers before a contract had been entered into with someone contacted by the broker. There is no evidence of any probative value in this case that the defendants ever at any time exercised such right and the nonexercise thereof could not affect the plaintiff's right to his commission.

One of the purchase contracts contains the clause, "also subject to the approval of the attorney for the lending financial institution." This clause as here worded is at best indefinite but by giving the clause a most generous interpretation in the light of the known customs of the real estate trade it appears that it was meant that the purchaser would not be bound on his agreement to purchase in the event that he should make application to obtain a mortgage loan on the premises from a financial institution and the attorney for the institution should find the condition of the title to the real estate such that he would not recommend that the financial institution lend money on the security thereof. So interpreted the condition was a condition subsequent for the protection of the purchaser and not the owner. It had no relation to the broker's rights to a commission for services which he had previously fully performed. Moreover, as a general rule, a broker's right to commission is not dependent upon the condition of the owner's title even when the sale fails of consummation by reason of such defect. See 8 Ohio Jurisprudence (2d), 142, Brokers, Section 60, and authorities therein cited.

We conclude that the decision of the lower court in favor of plaintiff is sustained by sufficient evidence and is not contrary to law and that the third and fourth assignments of error are without merit.

There being no error prejudicial to the defendants, the judgment of the lower court is hereby affirmed.

*Judgment affirmed.*

MIDDLETON, P. J., and YOUNGER, J., concur.