STEVENS, Appellee,

v.

MANCHESTER et al., Appellants.■

[Cite as *Stevens v. Manchester* (1998), 128 Ohio App.3d 305.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 97APE09–1159.

Decided June 11, 1998.

Thompson, Hine & Flory, L.L.P., James A. Meaney and Charles E. Ticknor III, for appellee.

Porter, Wright, Morris & Arthur, Robert W. Trafford and John F. Marsh, for appellants.

PETREE, Judge.

Defendants, Carol A. Manchester, Therese M. Bonin, Bonin–Manchester Partnership, and EZRA, Inc., appeal from a judgment of the Franklin County Court of Common Pleas in favor of plaintiff, Richard A. Stevens. Defendants set forth the following assignments of error:

"[I.] The trial court erred as a matter of law in finding that the sellers' attorneys did not act in good faith when disapproving the Stevens offer because, as the court itself found, the Stevens offer contained a purchase price allocation provision that 'certainly would permit in and of itself, without anything else, the attorneys to reject the [Stevens offer].'

"[II.] The trial court's finding that the sellers' attorneys did not approve the Stevens offer solely to accept the 'better' EZRA offer is against the manifest weight of the evidence.

"[III.] The trial court's finding that the sellers' attorneys acted in bad faith in disapproving the Stevens offer is against the manifest weight of the evidence and contrary to law.

"[IV.] The trial court erred as a matter of law in finding that EZRA tortiously interfered with the Stevens offer.

"[V.] The trial court's finding that EZRA tortiously interfered with the Stevens offer is contrary to the manifest weight of the evidence.

"[VI.] The trial court erred when it found that Stevens was entitled to specific performance and ordered sellers to convey the property to him.

"[VII.] The trial court's finding that Stevens is entitled to an award of attorneys fees is contrary to law and against the manifest weight of the evidence.

"[VIII.] The trial court erred when it granted specific performance but refused at least to order that EZRA be reimbursed for the expenses it incurred in making the property habitable."

Stevens submitted an offer to purchase a house and adjacent lots owned by Therese Bonin and Carol Manchester ("sellers"). The offer included separate prices for the house and lots. Stevens's offer was contingent upon (1) obtaining conventional financing and (2) inspection by both an architect and Stevens. The sellers submitted a counteroffer containing an attorney-approval clause that provided in part, "Offer is accepted provided * * * [a]pproval of contract by Sellers' attorney within 5 Business days of acceptance." That same day, Stevens submitted a counteroffer that accepted the terms of the sellers' counteroffer, including the attorney-approval clause, but included a clause that allowed him to allocate the purchase prices as between the house and lots in amounts that varied

from the purchase prices contained in the sellers' counteroffer. The sellers accepted Stevens's counteroffer and submitted it to their attorneys for review and approval.

Within the time specified for attorney disapproval, the sellers and their attorneys received a purchase offer from EZRA that contained no mortgage contingency clause, no inspection clause, no price allocation clause, and a better purchase price. The sellers accepted EZRA's offer and their attorneys gave timely written notice of disapproval of the contract with Stevens.

On November 7, 1994, Stevens filed a complaint against the sellers, alleging breach of contract.

On November 8, 1994, the sellers and EZRA closed the purchase of the property. Following the purchase, EZRA made substantial improvements to the property at a cost of approximately $34,700.

Stevens filed an amended complaint on November 22, 1994, adding EZRA as a defendant and asserting a claim of intentional interference with Stevens's contractual rights. Stevens's complaint demanded that the trial court (1) declare the conveyance of the property to EZRA invalid and (2) order specific performance of the Stevens contract or, in the alternative, grant judgment against the sellers and EZRA for compensatory and punitive damages and reasonable attorney fees.

Following a bench trial, the trial court issued findings of fact and conclusions of law wherein the trial court found, *inter alia,* that (1) the sellers engaged in bad faith in breaching the real estate purchase contract with Stevens; (2) EZRA tortiously interfered with the real estate purchase contract between the sellers and Stevens; (3) because Stevens's actions in filing his complaint on November 7, 1994 constituted *lis pendens* and actual notice of Stevens's alleged interest in the real estate, EZRA could acquire no interest in the real estate as against the Stevens title; (4) any improvements to the property made by EZRA were made at its own risk and were to be considered as EZRA's damages for its tortious interference with Stevens's contract; (5) Stevens was entitled to specific performance of the contract; and (6) due to the sellers' bad faith, Stevens was entitled to reasonable attorney fees; however, the court deferred the determination as to the reasonable amount of those fees until a later proceeding.

The trial court's journal entry of judgment incorporated its findings of fact and conclusions of law. The sellers and EZRA filed a notice of appeal. This court dismissed the appeal, finding that the order appealed from was not a final appealable order due to the trial court's failure to determine the amount of attorney fees. *Stevens v. Manchester* (Mar. 13, 1997), Franklin App. No. 96APE08–1022, unreported, 1997 WL 112761. Thereafter, the parties filed a stipulation that if reasonable attorney fees and costs were to be awarded to

Stevens, the amount was to be $32,000. The trial court's journal entry incorporated the parties' stipulation. On September 3, 1997, the sellers and EZRA filed a notice of appeal.

By the first, second, and third assignments of error, the sellers challenge the trial court's determination that the sellers and their attorneys acted in bad faith in disapproving Stevens's contract, thereby breaching the contract with Stevens.

As previously noted, the provision at issue in the instant case states as follows:

"Offer is accepted provided:

"* * *

"* * * Approval of contract by Sellers' attorney within 5 Business days of acceptance."

This court has expressly recognized that the acceptance of a real estate purchase contract subject to the approval of an attorney constitutes only a "conditional acceptance" of the contract. In *Whitlock v. Labadie* (May 7, 1974), Franklin App. No. 73AP–461, unreported, Labadie signed an agreement to sell real estate to Whitlock but included a provision in the contract that said "Subject to the approval of Russell L. Welch, Attorney, on or before September 10, 1972 * * *." *Id.* at 2. Whitlock agreed to Labadie's counteroffer, including the attorney-approval clause. Thereafter, Labadie's attorney disapproved the contract. Whitlock filed a complaint, seeking specific performance of the contract. After an evidentiary hearing, the trial court dismissed Whitlock's complaint, finding:

" 'This is an action for specific performance of the contract. The parties argue pro and con as to whether the approval of Mr. Welch was a real condition of the parties, or was a provision limited to the attorney's mere checking the document. We hold that it was a real condition of the parties to the contract, which was not met and therefore the contract was not binding on defendant. * * *' " *Id.* at 4.

This court affirmed the basic holding of the trial court,[1] stating:

"We believe the facts as presented in this matter indicate that there was a specific condition, as written into such contract, that, prior to any final acceptance thereof, an approval of the entire contract must be forthcoming from the attorney of the defendant-appellee. It is our opinion from the evidence that it was not the understanding of the purchaser that such presentation to the attorney of the defendant seller was on a limited basis of reviewing the wording and/or form only

---

1. This court ultimately remanded the case for further proceedings because the trial court had permitted the defendant's attorney to testify on behalf of his client but thereafter to assert the attorney-client privilege when cross-examined.

of such contract. We believe that the words of the contract are specific as to the right of the seller to submit such contract to his attorney prior to final acceptance of the purchase offer, and believe that such did in fact present a real condition of the sale." *Id.* at 5.

In addition to holding that a clause providing for attorney approval creates only a conditional acceptance of an offer, the *Whitlock* court also held that, in the absence of evidence suggesting a contrary intention, such a clause should be given a broad construction. As noted by the court, a broad interpretation is required to afford clients the benefit of their counsel's "total advice" and not just advice relating to the wording or form of the proposed contract:

"The facts would show that the services of Mr. Welch, as legal counsel to the defendant-appellee in the past, had been of a rather broad and constant nature in advising in a number of matters. Therefore we hold that the trial court may reasonably assume, and we approve such holding, that the total advice of his legal counsel was sought by this defendant-appellee rather than just the counsel relating to the wording or form of such contract." *Id.*

Another Ohio case that supports a broad construction of attorney approval clauses that do not contain express limiting language is *Tomaszewski v. John Parker Realty* (Oct. 16, 1992), Ottawa App. No. 91–OT–055, unreported, 1992 WL 289416. In that case, Tomaszewski offered to purchase seventy-two acres of land subject to several conditions, one of which was "Buyers [*sic*] Atty. on Feasibility." Tomaszewski's offer, including the above-noted condition, was accepted by the seller. Several months later, Tomaszewski's attorney notified the seller that he was withholding approval "on feasibility." Since this condition of the contract was not met, Tomaszewski requested the return of his deposit. When the seller refused to return the deposit, Tomaszewski filed a complaint. The trial court ordered the return of the deposit to Tomaszewski. The seller appealed, arguing that the term "feasibility," as used in the attorney-approval clause, was meant to restrict the attorney to determining only whether the project was "legally feasible." The court of appeals disagreed and affirmed the trial court's broad reading of the clause:

"* * * We agree with appellee that if appellant intended to restrict the attorney for appellee in such a manner, appellant had an obligation to see that the term 'legally feasible' was used. Accordingly, appellee's attorney did not overstep his boundaries, and was justified in withholding his approval of the feasibility of the project if he believed the project was economically unreasonable for his client." *Id.*

In *Youla v. Rappaport* (1949), 115 N.Y.S.2d 408, the court held that under a provision in the contract making it subject to rejection by the seller's attorney

within three days, the attorney could reject the contract for any reason. The parties had entered into a written contract for the sale of property. The agreement was drawn up by the attorney for the buyers and signed by the parties without the approval of, and in the absence of, the seller's attorney. The agreement provided that it was "subject to rejection by attorney for the seller in 3 days." Within the three-day period, the seller's attorney rejected the contract. The seller subsequently sold the property for a higher price. The buyers asserted that the rejection clause was to permit the seller's attorney to approve or disapprove the agreement only as to matters of form and that it had nothing to do with the price to be paid, so that the seller did not have the right to reject the agreement merely to obtain a higher price.

The court concluded that the words of the rejection clause were positive and explicit and that, construed in their ordinary sense, they meant that the seller's attorney had the right to reject the agreement for any reason whatsoever. Moreover, the court noted that if it had been intended that the right to reject the contract was to be limited merely to matters of form, it would have been a very simple matter to have included such a condition in the provision.

In *McKenna v. Case* (1986), 123 A.D.2d 517, 507 N.Y.S.2d 777, the court considered what constitutes "bad faith" by a party with regard to an attorney-approval clause. In that case, the parties entered into an agreement whereby the seller agreed to sell certain real property to the purchaser subject to the seller's attorney's approval of the agreement within five days of acceptance. The seller's attorney subsequently disapproved the contract. The court noted that the attorney's disapproval would operate to terminate the buyer's rights under the contract unless the disapproval was made in bad faith. The court found that the seller acted in bad faith, stating:

"[T]he uncontradicted proof demonstrates conclusively that defendant [seller] acted in bad faith by instructing his attorney to disapprove the contract. Defendant, by interfering and preventing his attorney from considering the contract, acted in bad faith and, therefore, the condition that the contract be approved by seller's attorney must be deemed waived and the contract formed." *Id.,* 123 A.D. 2d at 517, 507 N.Y.S.2d at 777–778.

In *Ulrich v. Daly* (1996), 225 A.D.2d 229, 650 N.Y.S.2d 496, the buyers sought specific performance of a real estate purchase agreement that contained an attorney-approval clause. The sellers' attorney rejected the contract after a second offer was received that contained no contingencies and provided for an earlier closing and a higher price. The court noted that the dispositive issue on appeal was whether the attorney-approval clause permitted the sellers' attorney from considering extrinsic matters in the approval process. The court granted summary judgment for the sellers, holding:

"The only limitation contained in the relevant provision of the attorney approval clause is that attorney approval or disapproval be based upon a matter contained in the contract. In this case, the attorney disapproved of the contingency clause, closing date and price, all matters contained in the contract. There is nothing in the attorney approval clause which prohibits the attorney from considering matters extrinsic to the contract in deciding whether to approve or disapprove the matters contained in the contract. Such a prohibition would severely limit the attorney's ability to advise his client. For example, if plaintiffs are correct, a seller's attorney would be unable to disapprove a mortgage contingency clause which specifies an interest rate so far below the prevailing rate that it would be impossible for the purchaser to satisfy the contingency. The prevailing rate is an extrinsic matter which could not be considered. In essence, plaintiffs seek to limit the attorney approval process to consideration of the form of the contract only, for reference to extrinsic matters would often be required in reviewing substantive matters in the contract. We are of the view that if the parties had intended the limitation urged by plaintiffs, they would have included it (see, *Youla v. Rappaport*, 115 N.Y.S.2d 408)." *Id.*, 225 A.D.2d at 231, 650 N.Y.S.2d at 497–498.

The court also rejected the buyers' claim that the sellers acted in bad faith because the sellers' attorney compared the buyers' offer to an offer received from another party. The court held that consideration of the other offer and comparison of its terms with that of the buyers' contract did not constitute bad faith because the attorney-approval clause did not prohibit consideration of matters outside the contract:

"* * * In contrast to the *McKenna* [*v. Case* (1986), 123 A.D.2d 517, 507 N.Y.S.2d 777] case, however, there is no evidence that defendants interfered and prevented their attorney from considering the contract. It is clear that in comparing the various terms of the other offer with the corresponding terms of the parties' contract, defendants' attorney considered the contract. That the attorney's review of the matter included consideration of the other offer does not establish bad faith, for the attorney approval clause does not prohibit consideration of extrinsic matters." *Id.*, 225 A.D.2d at 231, 650 N.Y.S.2d at 498.

■ In the instant case, the approval of the sellers' attorneys constituted a condition of the sale to Stevens. The language utilized by the sellers in their counteroffer is clear—Stevens's offer was "accepted *provided*" it was approved by the sellers' attorneys within five business days of acceptance. The clause in question expressly made the agreement contingent upon the attorneys' approval and thereby bound the parties to abide by the opinion of the sellers' attorneys. The trial court incorrectly found that a contract had been formed that bound the sellers to sell the property to Stevens, a finding which ultimately colored its

entire analysis as to whether the sellers' attorneys acted in good faith when they disapproved Stevens's offer.

Furthermore, the language used in the attorney-approval clause is positive and explicit and, construed in its ordinary sense, means that the sellers' attorneys had a right to reject Stevens's offer for any reason whatsoever. *Youla, supra.* If it had been intended that the right to reject Stevens's offer was to be limited in some way, it would have been a very simple matter to have included such a condition in the provision. *Id.* However, the clause contains no such limitations.

Stevens argues that the sellers' trial testimony establishes that it was not their intention that Stevens's offer be disapproved in order to accept a more favorable offer, and that the sellers' attorneys acted in bad faith because they disapproved the offer for precisely the reason specifically prohibited by the sellers.

However, the sellers' testimony establishes that they vested their attorneys with broad discretion to disapprove any offer that did not meet the attorneys' approval for any number of reasons. Manchester testified that she relied totally on the advice of her attorney and intended the attorney-approval clause to be utilized by her attorney to analyze the entire contract. Manchester further testified that she vested her attorney with full discretion to exercise the attorney's approval or disapproval of any offer received and instructed her to disapprove any contract that did not meet with her approval. Bonin testified that she gave her attorney discretion to disapprove or approve Stevens's offer based on both the general soundness and specific provisions of the contract and that she relied on her attorney's advice because she was unfamiliar with the areas of law and real estate.

The sellers' attorneys both testified that they disapproved Stevens's offer based on the potential problems with the financing and inspection contingencies and the price allocation clause. Manchester's attorney testified that she reviewed and considered Stevens's offer independent of EZRA's offer and determined that Stevens's offer was unacceptable. She further testified that she disapproved Stevens's offer based on the fact that it contained substantial problems, such as the price allocation clause and inspection contingencies that were not a part of the EZRA offer. She further testified that she discussed the problems with the price allocation clause with Bonin's attorney, who agreed that the clause could pose potential tax problems for the sellers.

This court finds that a broad construction should be given to the attorney-approval clause in the instant case. As in *Whitlock, supra,* the facts demonstrate that the sellers had established a relationship with their attorneys prior to the sale of the home and relied on their attorneys' advice on a wide range of matters; thus, it must be assumed that the sellers sought their attorneys' "total advice" on the sale of the home.

■ Furthermore, even if the sellers' attorneys disapproved Stevens's offer strictly to accept the more favorable offer from EZRA, the attorneys' actions were well within the discretion afforded by the attorney-approval clause and did not constitute bad faith. Consideration of EZRA's offer and comparison of its terms with that of Stevens's offer did not constitute bad faith because the attorney-approval clause did not prohibit consideration of and comparison to other offers. Stevens's counteroffer contained no language restricting the sellers' attorneys from comparing his offer to other offers or from disapproving the contract in order to obtain a more favorable offer. Indeed, Stevens's counteroffer accepted the sellers' counteroffer, including the broadly worded approval clause. If Stevens had intended to restrict the sellers' attorneys from comparing his offer to that of another party, or from disapproving the contract in order to accept a better offer, Stevens had an obligation to see that language to that effect was used.

■ Finally, there is no evidence that the sellers interfered and prevented their attorneys from considering Stevens's offer. No evidence suggests that the sellers told their attorneys to disapprove Stevens's offer. Indeed, Manchester expressly testified that she did not discuss Stevens's offer with her attorney before disapproval. Manchester's attorney also testified that Manchester did not instruct her to disapprove Stevens's offer. Both attorneys testified that they carefully reviewed Stevens's offer and found it to be unacceptable. Even assuming that they compared Stevens's offer to EZRA's offer and determined that the EZRA offer was more favorable for their clients, such consideration does not constitute bad faith because the attorney-approval clause does not prohibit consideration of other more favorable offers.

In short, the evidence does not support the trial court's finding that the sellers or their attorneys acted in bad faith in disapproving Stevens's offer. The attorney-approval clause gave the sellers' attorneys the right to disapprove Stevens's offer for any reason. Stevens did not object to the language contained in the clause. The sellers' attorneys testified that they disapproved the contract based on potential tax problems for their clients associated with the purchase-price-allocation clause and the architect, inspection, and financing contingencies contained in Stevens's offer. Even assuming, as the trial court did, that the attorneys rejected Stevens's offer solely to accept the more favorable EZRA offer, such action does not constitute bad faith.

Having found that there was no enforceable contract between the sellers and Stevens because the condition precedent, the sellers' attorneys' approval, never occurred and having found no bad faith on the part of either the sellers or their attorneys in disapproving Stevens's offer, we conclude that there could not have

been a breach. Accordingly, the first, second, and third assignments of error are sustained.

■ By the fourth and fifth assignments of error, EZRA challenges the trial court's finding that EZRA intentionally interfered with Stevens's contractual rights. In *Kenty v. Transamerica Premium Ins. Co.* (1995), 72 Ohio St.3d 415, 650 N.E.2d 863, the Supreme Court of Ohio held at paragraph two of the syllabus:

"In order to recover for a claim of intentional interference with a contract, one must prove (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages."

■ Having determined in the first, second, and third assignments of error that there existed no binding contract between Stevens's and the sellers subject to the intentional procurement of its breach by EZRA, the trial court erred in finding that EZRA intentionally interfered with Stevens' contractual rights. Accordingly, the fourth and fifth assignments of error are sustained.

By the sixth assignment of error, the sellers and EZRA contend that the trial court erred in finding that Stevens was entitled to specific performance of the contract and in ordering EZRA to convey the property to him. Based on our determination in assignments of error one, two, and three that no contract existed between Stevens and the sellers, we find that the trial court erred in granting Stevens specific performance and in ordering EZRA to convey the property to him. Accordingly, the sixth assignment of error is sustained.

By the seventh assignment of error, the sellers argue that the trial court's finding that Stevens is entitled to an award of attorney fees is contrary to law and against the manifest weight of the evidence. Having determined that neither the sellers nor their attorneys engaged in bad faith, we find that the trial court's award of attorney fees was erroneous. Accordingly, the seventh assignment of error is sustained.

By the eighth assignment of error, EZRA contends that the trial court erred in refusing to order that EZRA be reimbursed for expenses incurred in making the property habitable. Our determination that the trial court erred in granting Stevens specific performance renders this assignment of error moot. App.R. 12(B).

For the foregoing reasons, the first, second, third, fourth, fifth, sixth, and seventh assignments of error are sustained, and the eighth assignment of error is moot. Accordingly, the judgment of the Franklin County Court of Common

**316**

Pleas is hereby reversed, and the cause is remanded for further proceedings in accordance with law and consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

LAZARUS and BOWMAN, JJ., concur.