OPINION
{¶ 1} Plaintiffs-appellants, Kellie Auto Sales, Inc. ("Kellie Auto") and Raymond Said ("Said") (collectively, "appellants"), appeal from the judgment of the Franklin *Page 2 
County Court of Common Pleas granting in part and denying in part appellants' motion for summary judgment and granting in part and denying in part the motion for summary judgment of defendants-appellees, Rahbars Ritters Enterprises, LLC ("Rahbars Ritters"), The Ritter Co. Real Estate Ltd. ("Ritter Co."), Rosemarie Ritter, William Ritter, Mohammad Hossein Rahbar, and Afsaneh Zekri (collectively, "appellees"). Appellees filed a cross-appeal from the trial court's disposition of the motions for summary judgment. For the following reasons, we affirm in part and reverse in part.
 {¶ 2} On September 7, 2005, appellants filed a complaint in the Franklin County Court of Common Pleas against appellees and additional defendant, Oak Hill Banks, asserting claims arising out of the failed purchase of approximately 7.348 acres of undeveloped real property owned by Rahbars Ritters. Rahbars Ritters is a limited liability company, equally owned by Rosemarie Ritter, William Ritter, Mohammad Hossein Rahbar, and Afsaneh Zekri. In their complaint, appellants alleged claims for breach of contract, conversion, promissory estoppel, specific performance, and injunctive relief. Simultaneous with the filing of their complaint, appellants filed motions for a preliminary injunction and temporary restraining order.[1] On October 5, 2005, appellees filed an answer to appellants' complaint, along with counterclaims for violations of R.C. 2323.51 and Civ.R. 11, slander of title, and intentional interference with business relations.[2] Appellants filed an answer to appellees' counterclaims on October 7, 2005. *Page 3 
 {¶ 3} Of primary importance to appellants' claims and this appeal is a Real Estate Purchase Contract ("Purchase Contract"), dated June 20, 2005, completed on the standardized form adopted by the Columbus Board of Realtors and the Columbus Bar Association. On June 20, 2005, Said, who is the President and sole owner of Kellie Auto Sales, met with Rosemarie Ritter, a licensed real estate broker, at her office, where the Purchase Contract was prepared in Said's presence. Said signed the Purchase Contract, as Buyer, with no mention of Kellie Auto Sales or of Said acting in a representative capacity, and Rosemarie Ritter and William Ritter signed the Purchase Contract, as seller, in their capacity as "partners]." Underneath the Ritters' signatures, address, and telephone number, appear two additional blank signature lines with a handwritten notation of "partner" on each. The Purchase Contract neither identifies Rahbars Ritters as the seller, nor identifies any other partner by name. In addition to signing the Purchase Contract, Said and Rosemarie Ritter signed a Disclosure of Agency Relationship, acknowledging that Rosemarie Ritter and Ritter Co. represented the seller in the transaction contemplated by the Purchase Contract.
 {¶ 4} While negotiating with Said, Rosemarie Ritter handwrote into the Purchase Contract a term requiring the buyer to pay $10,000 earnest money to the seller upon signing, which Said tendered. Rosemarie Ritter also handwrote into the Purchase Contract an attorney approval clause, requiring that "[f]inal terms and conditions are subject to approval by both parties attorneys [sic] prior to 7/12/05." The Purchase Contract provided for a closing on or before July 13, 2005.
 {¶ 5} On July 13, 2005, two days after the deadline for attorney approval, Said's attorney received an e-mail containing a new proposed contract from Rahbars Ritters' *Page 4 
attorney, Donald T. Plank. The new contract included additional terms, including requirements for the construction of a curb cut and the installation of city water lines for the benefit of adjacent property owned by members of Rahbars Ritters, a deadline for commencement of development, an irrevocable letter of credit in the amount of $125,000 payable to Rahbars Ritters, and the right to a return of the property to Rahbars Ritters under certain conditions without compensation for improvements thereto. The July 13, 2005 e-mail from attorney Plank was Said's first indication that either appellees or their counsel were dissatisfied with the terms of the Purchase Contract. Rahbars Ritters refused to close under the Purchase Contract on July 13, 2005.
 {¶ 6} On May 12, 2006, the parties filed cross-motions for summary judgment. Appellees moved for summary judgment on appellants' claims, arguing, primarily, that the attorney approval clause in the Purchase Contract had not been satisfied and that the two remaining members of Rahbars Ritters did not sign the Purchase Contract.[3] In support of their motion, appellees submitted an affidavit from attorney Plank, who stated that he received the Purchase Contract from his client prior to July 12, 2005, and that "[a]t no time did I approve the Offer." In their own motion, appellants requested an order of specific performance, arguing that the Ritters' signatures bound Rahbars Ritters to the Purchase Contract and that the attorney approval clause was satisfied or waived because neither Said nor his attorney received notice that Rahbars Ritters' *Page 5 
attorney disapproved the Purchase Contract before July 12, 2005. The parties fully briefed the cross-motions for summary judgment.
 {¶ 7} On August 9, 2006, the trial court issued a decision and entry granting in part and denying in part the cross-motions for summary judgment. Specifically, the trial court granted summary judgment in favor of appellants on their conversion claim and on appellees' cross-claims for violations of R.C. 2323.51, violations of Civ.R. 11, and slander of title. The trial court granted summary judgment in favor of appellees on appellants' claims for breach of contract, specific performance, and injunctive relief. The trial court denied both motions for summary judgment on appellants' claim for promissory estoppel and appellees' counterclaim for intentional interference with business relations. With respect to appellants' primary claim for breach of contract, the trial court concluded that, although the Ritters had authority to bind Rahbars Ritters, the Purchase Contract did not become binding on either party because the condition precedent requiring attorney approval was not satisfied. Despite issuing a combined decision and entry on August 9, 2006, the trial court again journalized its decision on the motions for summary judgment on September 1, 2006, stating that the judgment was not a "terminating" entry.
 {¶ 8} On November 14, 2006, the parties filed a document captioned "Stipulated Mutual Dismissals Without Prejudice of Remaining Claims Pursuant to Civil Rule 41(A)," rendering the trial court's previous entry of summary judgment a final appealable order.
 {¶ 9} Appellants filed a timely notice of appeal on December 12, 2006, and appellees filed a notice of cross-appeal on December 22, 2006. Appellants assert two assignments of error: *Page 6 
 FIRST ASSIGNMENT OF ERROR:
 The trial court erred in finding that no binding contract existed between the parties due to the purported "attorney approval" clause.
 SECOND ASSIGNMENT OF ERROR:
 The trial court erred in denying Plaintiffs' Motion for Summary Judgment and in granting Defendants' Motion for Partial Summary Judgment.
Appellees assert the following four cross-assignments of error:
ASSIGNMENT OF ERROR I
 The trial court erred as a matter of law by finding that the signatures of Defendants-Appellees Mr. and Mrs. Ritter provided the authority to bind Defendant-Appellee [Rahbars Ritters] when the real estate purchase proposal had two additional hand-written signature lines for two of the four members and that those two members, representing 50 percent of the ownership of [Rahbars Ritters], never signed the document.
 ASSIGNMENT OF ERROR II
 The trial court erred as a matter of law in not granting Defendants-Appellees' motion for summary judgment on Plaintiffs-Appellants' promissory estoppel claims because Plaintiff[s]-Appellants put forth no evidence of justifiable reliance and because a party cannot claim that both an express contract and quasi contract exist over the same subject matter.
 ASSIGNMENT OF ERROR III
 The trial court erred as a matter of law in granting Plaintiffs-Appellants' motion for summary judgment against Defendants-Appellees on Plaintiffs-Appellants' conversion claim because Plaintiffs-Appellants never moved the trial court for summary judgment on this claim. *Page 7 
 ASSIGNMENT OF ERROR IV
 The trial court erred as a matter of law in granting Plaintiffs-Appellants' motion for summary judgment against Defendants-Appellees on Defendants-Appellees' counterclaims because neither Plaintiffs-Appellants nor Defendants-Appellees ever moved the trial court for summary judgment on these claims.
 {¶ 10} All of the assignments of error stem from the trial court's disposition of the parties' motions for summary judgment. Appellate review of summary judgments is de novo. Koos v. Cent. Ohio Cellular,Inc. (1994), 94 Ohio App.3d 579, 588, citing Brown v. Scioto Cty. Bd. ofCommrs. (1993), 87 Ohio App.3d 704, 711. When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination. Maust v. Bank OneColumbus, N.A. (1992), 83 Ohio App.3d 103, 107; Brown at 711.
 {¶ 11} Pursuant to Civ.R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Accordingly, summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the non-moving party.Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66. Because summary judgment is a *Page 8 
procedural device to terminate litigation, courts should award it cautiously after resolving all doubts in favor of the non-moving party.Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356, 358-359, quotingNorris v. Ohio Std. Oil Co. (1982), 70 Ohio St.2d 1, 2.
 {¶ 12} We first address appellants' assignments of error. Because each of appellants' arguments on appeal revolves around the effect of the attorney approval clause in the Purchase Contract, we address appellants' assignments of error together. Appellants argue that appellees' failure to notify appellants of their counsel's disapproval of the Purchase Contract within the approval period constituted satisfaction or waiver of the attorney approval clause and that appellees were, therefore, bound by the Purchase Contract.
 {¶ 13} The construction of written contracts is a matter of law.Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, paragraph one of the syllabus. The purpose of contract construction is to discover and give effect to the parties' intent, which is presumed to reside in the contractual language they chose to use. Graham v. Drydock CoalCo., 76 Ohio St.3d 311, 313, 1996-Ohio-393. Common words in a written contract will be given their ordinary meaning unless manifest absurdity results or unless some other meaning is clearly evidenced from the face or overall content of the contract. Alexander at paragraph two of the syllabus. If language in a contract is clear and unambiguous, the court cannot create a new contract by finding an intent not expressed in the clear language employed by the parties. Id. at 246. If the contract is clear and unambiguous, its interpretation is a matter of law, and there is no issue of fact to determine. Inland Refuse Transfer Co. v.Browning-Ferris Industries of Ohio, Inc. (1984), 15 Ohio St.3d 321, 322, citing Alexander. However, where the contract *Page 9 
language is reasonably susceptible of more than one interpretation, the meaning of the ambiguous language is a question of fact. Ohio HistoricalSoc. v. Gen. Maint. Eng. Co. (1989), 65 Ohio App.3d 139, 146.
 {¶ 14} This court addressed the effect of an attorney approval clause in a real estate purchase contract in Whitlock v. Labadie (May 7, 1974), Franklin App. No. 73AP-461. In Whitlock, at the seller's request, the purchase contract was "`[s]ubject to the approval of Russell L. Welch, [seller's] Attorney, on or before September 10, 1972[.]'" Before the deadline for attorney approval, the seller's attorney sent a letter to the buyer and to the involved brokers, indicating that he did not approve the purchase contract. In the buyer's subsequent suit for specific performance, the trial court rejected the buyer's argument that the attorney approval clause limited the review of the seller's attorney to the wording of the contract and found that the approval of the seller's attorney was a real condition of the contract, which was not met. Accordingly, the trial court held that the contract was not binding on the seller. This court affirmed, stating:
 * * * [T]here was a specific condition, as written into such contract, that, prior to any final acceptance thereof, an approval of the entire contract must be forthcoming from the attorney of the [seller]. * * * We believe that the words of the contract are specific as to the right of the seller to submit such contract to his attorney prior to final acceptance of the purchase offer, and believe that such did in fact present a real condition of the sale.
Id. Thus, we determined that, absent "an approval" from the seller's attorney, there was no final acceptance of the purchase contract, and the seller was not bound thereby.
 {¶ 15} This court revisited issues regarding attorney approval clauses in Stevens v. Manchester (1998), 128 Ohio App.3d 305. There, the real estate purchase contract *Page 10 
included a clause that provided: "`Offer is accepted provided * * * [a]pproval of contract by Sellers' attorney within 5 Business days of acceptance.'" Id. at 307. Within the time specified for attorney approval, the sellers accepted a more favorable purchase offer from a third-party, and their attorneys gave timely written notice of disapproval of the original purchase contract. In an action for specific performance, the trial court found, inter alia, that the sellers engaged in bad faith by breaching the contract with the plaintiff and that the plaintiff was entitled to specific performance. We reversed, relying onWhitlock, and stated: "This court has expressly recognized that the acceptance of a real estate purchase contract subject to the approval of an attorney constitutes only a `conditional acceptance' of the contract." Stevens at 309. We, therefore, found that the attorney approval clause was a condition precedent to the creation of an enforceable contract, and, because the condition precedent had not occurred, rejected the trial court's finding that a binding contract had been formed. We concluded that the attorney approval clause "expressly made the agreement contingent upon the attorneys' approval[.]" Id. at 312.
 {¶ 16} Like in Whitlock, we rejected the buyer's argument that the review contemplated by the attorney approval clause was limited. In doing so, we focused on the language of the clause and noted other cases suggesting that, absent limiting language or evidence suggesting a contrary intention, attorney approval clauses should be given broad constructions to afford contracting parties the benefit of their attorney's total advice. Id. at 310-312, citing Whitlock; Tomaszewski v.John Parker Realty (Oct. 16, 1992), Ottawa App. No. 91-OT-055; Youla v.Rappaport (1949), 115 N.Y.S.2d 408; McKenna v. Case (1986), 507 N.Y.S.2d 777; Ulrich v. Daly (1996), *Page 11 650 N.Y.S.2d 496. In the absence of language limiting the right of the sellers' attorney to approve or reject the purchase contract, we found that the sellers' attorney was entitled to either approve or disapprove the purchase contract "for any reason whatsoever." Because the intent of contracting parties is presumed to reside in the language they chose, see Graham, we noted: "If it had been intended that the right to reject [the buyer's] offer was to be limited in some way, it would have been a very simple matter to have included such a condition in the provision." (Emphasis added.) Stevens at 313, citing Youla. The use of the word "offer" reinforced our conclusion that, until the attorney approval clause was satisfied, there was no final acceptance of the purchase offer.
 {¶ 17} While acknowledging the language in Whitlock andStevens that acceptance of a purchase agreement containing an attorney approval clause is only a conditional acceptance, appellants argue that those cases are inapposite here because the attorneys in those cases expressly rejected the purchase agreements pursuant to the attorney approval clauses. Although true that both Whitlock and Stevens involved express disapprovals by reviewing attorneys, this court did not hold, in either case, that such express notice of disapproval is required to exercise rights of approval or disapproval under an attorney approval clause. Nevertheless, in supposed contrast to Whitlock andStevens, appellant directs this court to the Eighth District Court of Appeals' opinion in Hongosh v. Piszko (May 19, 1983), Cuyahoga App. No. 45623.
 {¶ 18} In Hongosh, the plaintiffs-buyers signed an agreement to purchase a home. Four days later, the seller signed the same purchase agreement, but his broker's office manager added a handwritten clause to the agreement, stating: "`This agreement is subject to the seller obtaining approval of his attorney within 72 hrs.'" Id. Despite his *Page 12 
modification of the purchase agreement, the broker did not resubmit the agreement to the buyer. Rather, the broker's sales representative informed the plaintiffs that the seller "`had accepted the contract and it was only pending that his lawyer oversees it to make sure everything was in order.'" Id. After the expiration of the 72-hour attorney approval period, the seller's attorney approved the contract, at which time the broker's employee crossed out the handwritten clause on the purchase contract and telephoned the buyers to confirm that their offer had been accepted. Before closing, the seller died, and the property was not conveyed to the buyers, who filed an action for specific performance against the seller's son, as the sole heir and administrator of the seller's estate. The trial court rendered a verdict for the buyers, ordering specific performance.
 {¶ 19} On appeal, the defendant argued that no valid purchase contract existed, in part because the handwritten attorney approval clause was not timely satisfied. The Eighth District Court of Appeals disagreed, finding that the attorney approval clause was "at most a condition subsequent to the contract[,] * * * a contingency whose fulfillment terminates or defeats a valid and existing contract." Id. The Eighth District concluded that a binding contract was formed when the seller signed the purchase contract, despite the seller's addition of the attorney approval term, and stated that, although the attorney approval clause granted the seller the right to avoid the contract if his attorney disapproved it within 72 hours, "[t]hat contingency did not destroy the agreement in that limited time or at any later time." Id.
 {¶ 20} In Hongosh, the Eighth District relied on Retterer v.Bender (1958), 106 Ohio App. 369, in which the Third District Court of Appeals decided a real estate broker's claim for commissions under two unconsummated real estate purchase *Page 13 
contracts. One of the purchase contracts contained a provision making sale of the property "`subject to the approval of the attorney for the lending financial institution[,]'" which the court concluded was a condition subsequent to the contract. Id. at 371. The court read the approval provision as meaning that "the purchaser would not be bound on his agreement to purchase in the event that he should make application to obtain a mortgage loan on the premises from a financial institution and the attorney for the institution should find the condition of the title to the real estate such that he would not recommend that the financial institution lend money on the security thereof." Id. at 375. Under the court's reading, the approval clause was limited to problems with the title to the subject property and did not encompass dissatisfaction with the terms and conditions of the purchase and sale. Indeed, the court had already concluded that the parties manifested the requisite mutual assent to the terms and conditions of the purchase and sale necessary to form a binding contract. See id. at 373.
 {¶ 21} In Hongosh, citing Retterer, the court stated that "a contract for the sale of real property is formed when both the purchasers and the vendor sign an agreement which specifies the terms of the purchase and sale." While Retterer involved such a situation, the approval clause inHongosh permitted rejection of the very terms and conditions of the purchase contract. Accordingly, we disagree with Hongosh's reliance onRetterer. Here, unlike in Retterer, although the Purchase Contract specifies terms and conditions of the sale, the parties expressly conditioned the binding nature of the "[f]inal terms and conditions" on the approval of their respective attorneys. Having expressly agreed that the "[f]inal terms and conditions" were subject to their attorneys' approval, the parties did not manifest mutual assent to be bound by the terms and *Page 14 
conditions of the sale. Thus, in accordance with Whitlock andStevens, we conclude that final acceptance of the Purchase Contract itself was conditioned upon the approval of the parties' attorneys.
 {¶ 22} We next turn our attention to whether the attorney approval clause contained in the Purchase Contract was satisfied, as appellants argue, thus requiring appellees to proceed with the sale. The attorney approval clause provides that the terms and conditions of the Purchase Contract are subject to the approval of the parties' attorneys, but it does not specify what, if any, action is required to satisfy the clause. Appellants contend that exercise of the attorney approval clause required appellees or their counsel to timely and unambiguously communicate disapproval of the purchase contract to appellants within the approval period. In support of that contention, appellants cite a law review article that, in turn, cites cases from Illinois and New Jersey. See Noble-Allgire, Attorney Approval Clauses in Residential Real Estate Contracts-Is Half a Loaf Better Than None? (2000), 48 Kan.L.Rev. 339, 374, citing Hubble v. O'Connor (1997), 291 Ill.App.3d 974, andKutzin v. Pirnie (1991), 124 N.J. 500.
 {¶ 23} Because the attorney approval clauses in Hubble andKutzin differ dramatically from the broad clause contained in the Purchase Contract here, we find those cases easily distinguishable. InHubble, the attorney approval clause provided:
 "This contract is contingent upon the approval hereof as to form by the attorney(s) for Buyer and Seller within 5 Business days after the Seller's acceptance of this contract. Unless written notice of disapproval is given within the time period specified above, then this contingency shall be deemed waived and this contract will remain in full force and effect. *Page 15 
 If written notice of disapproval is given within the time period specified above, this contract shall be null and void and the earnest money shall be returned to the Purchaser."
Hubble at 977. By its express terms, the attorney approval clause inHubble required written notice of disapproval and, more importantly, stated the consequences of failing to give such notice. According to the express language of the clause, failure to give such notice within the specified period leaves the parties bound to the terms of the contract.
 {¶ 24} In Kutzin, the attorney approval clause provided, in part:
1. Study by Attorney
 The Buyer or the Seller may choose to have an attorney study this contract. If an attorney is consulted, the attorney must complete his or her review of the contract within a three-day period.
 This contract will be legally binding at the end of this three-day period unless an attorney for the Buyer or the Seller reviews and disapproves of the contract.
 * * *
3. Notice of Disapproval
 If an attorney for the Buyer or the Seller reviews and disapproves of this contract, the attorney must notify the REALTOR(S) and the other party named in this contract within the three-day period.
 Otherwise this contract will be legally binding as written. The attorney must send the notice of disapproval to the REALTOR(S) by certified mail, by telegram, or by delivering it personally. The telegram or certified letter will be effective upon sending. The personal delivery will be effective upon delivery to the REALTOR(S) office. The attorney may also, but need not, inform the REALTOR(S) of any suggested revision(s) in the contract that would make it satisfactory. *Page 16 
Kutzin at 503. Like the clause in Hubble, the Kutzin attorney approval clause clearly required exercise thereof to be by express, written notice of disapproval and expressly provided that, in the absence of such notice within the relevant period, the contract became legally binding.
 {¶ 25} Based on the contract language of the respective contracts, theHubble and Kutzin courts, of course, required an attorney to disapprove the contract clearly in the manner specified in the contracts. However, unlike the Hubble and Kutzin clauses, the attorney approval clause in this case specifies no such express means of invoking the right to approve or disapprove the Purchase Contract. The attorney approval clause here does not require written notice of disapproval. Moreover, the attorney approval clause does not state that, absent notice of disapproval, the Purchase Contract either becomes or remains binding. To the contrary, the attorney approval clause speaks solely in terms of approval, not disapproval. Accordingly, we find the courts' reasoning inHubble and Kutzin inapposite here.
 {¶ 26} Acknowledging that the attorney approval clause here is silent on the means of exercise, appellants argue that the clause is ambiguous and must be construed against appellees because Rosemarie Ritter drafted the clause. According to appellants, beginning July 12, 2005, the terms and conditions of the purchase contract were no longer subject to attorney approval and were binding, as written, because neither attorney provided timely notice of disapproval. Appellants claim that the absence of any notice of disapproval by appellees' attorney before July 12, 2005 operated as satisfaction or waiver of the attorney approval contingency. We disagree. *Page 17 
 {¶ 27} The attorney approval clause's silence regarding the means of exercising approval rights does not render the clause ambiguous. As the trial court correctly stated, "the language of the [Purchase Contract] only requires `approval' and did not require [appellees] to notify [appellants] of a rejection." We agree with the trial court that, "[h]ad the parties intended such a result, they should have included that language." Given the absence of any express requirement that an attorney give express notice of disapproval within the approval period, the absence of any expression of intent that the Purchase Contract be legally binding in the absence of an expression of disapproval, and our conclusion that, until attorney approval was obtained, the Purchase Contract was only conditionally accepted, we find that the Purchase Contract did not bind the parties, in light of appellees' uncontradicted evidence that their counsel did not approve the Purchase Contract within the approval time. See Nelson v. Ring (1988), 524 N.Y.S.2d 544 (holding that, until approved, a purchase agreement requiring attorney approval could not be binding between the parties and that the agreement expired at the expiration of the approval period). To require notice of disapproval in the absence of an express contractual requirement would add terms to the Purchase Contract, in contravention of our duty to apply the unambiguous contractual language that the parties chose. Had the parties intended to require express notice of disapproval or that the Purchase Contract become binding in the absence of such notice, they could have easily written such terms into the Purchase Contract. SeeStevens. And, although we agree with appellants that a requirement for written notice of approval or disapproval is a preferable method of writing attorney approval clauses in real estate purchase *Page 18 
contracts, we may not create a new contract, in contravention of the unambiguous contract language utilized by the parties.
 {¶ 28} To persuade this court to require express notice of disapproval, appellants suggest that a party, under a provision like that at issue here, may avoid the contract by simply failing to provide its counsel with the contract for review. Despite appellants' concerns, we note that a party may not act in bad faith to effectuate failure of a condition precedent and defeat a contract. See Stevens (finding no enforceable contract based upon the failure of the condition precedentand the absence of bad faith by the sellers or their attorneys). At oral argument, appellees' counsel agreed that appellees had a duty to submit the Purchase Contract to their attorney for review. Here, in support of their motion for summary judgment, appellees submitted undisputed evidence that appellees presented the Purchase Contract to their counsel, who reviewed the contract and suggested modifications to protect his clients' interests. The record contains no evidence that appellees or their counsel acted in bad faith in not approving the Purchase Contract. The absence of any evidence at argument that appellees acted in bad faith, coupled with the failure of the attorney approval condition, compels us to conclude that the trial court appropriately granted summary judgment in appellees' favor on appellants' breach of contract, specific performance, and injunctive relief claims.
 {¶ 29} Because we conclude that the trial court did not err in granting summary judgment in favor of appellees on appellants' claims for breach of contract, specific performance, and injunctive relief, based on its conclusion that no binding contract existed between the parties, we overrule appellants' assignments of error. *Page 19 
 {¶ 30} We now turn to appellees' cross-assignments of error.
 {¶ 31} In their first cross-assignment of error, appellees contend that the trial court erred in concluding that the signatures of Rosemarie Ritter and William Ritter bound Rahbars Ritters to the Purchase Contract in the absence of signatures from the remaining members of Rahbars Ritters. In their brief, appellees assert that their first cross-assignment of error is conditional and needs to be addressed only in the event that this court sustains appellants' assignments of error regarding the effect of the attorney approval clause. Having overruled appellants' assignments of error, upon concluding that the Purchase Contract was not binding on Rahbars 
Ritters because the attorney approval clause was not satisfied, we find appellees' first cross-assignment of error moot, and we overrule it.
 {¶ 32} In their second cross-assignment of error, appellees contend that the trial court erred in denying their motion for summary judgment on appellants' promissory estoppel claim. The trial court refused to enter summary judgment on appellants' promissory estoppel claim, stating that the parties failed to address that claim in their motions for summary judgment and memoranda in support thereof. However, on November 14, 2006, the parties stipulated to voluntary dismissals of all remaining claims, including appellants' claim for promissory estoppel, pursuant to Civ.R. 41(A)(1). A voluntary dismissal divests a trial court of jurisdiction over an action, and a claim so dismissed is treated as if it had never been filed. Zimmie v. Zimmie (1984), 11 Ohio St.3d 94,95. Moreover, a voluntary dismissal without prejudice dissolves interlocutory orders made by the court in that action. Capitol Mtge.Serv., Inc. v. Hummel, Franklin App. No. 01AP-1104, 2002-Ohio-4301, at ¶ 52; Nielsen v. Firelands Rural Elec. Coop., *Page 20 Inc. (1997), 123 Ohio App.3d 104, 106. Accordingly, an appellate court lacks jurisdiction to review a trial court's denial of summary judgment on a claim that was subsequently voluntarily dismissed. See Lilly v.Bradford Invest. Co., Franklin App. No. 06AP-1227, 2007-Ohio-2791, at ¶ 18; Gilbert v. WNIR 100 FM (2001), 142 Ohio App.3d 725, 747. Here, the voluntary dismissal of all remaining claims dissolved the portion of the trial court's interlocutory order denying summary judgment on appellants' promissory estoppel claim, leaving nothing for this court to review on appeal. Thus, we find appellees' second cross-assignment of error to be moot, and we overrule it.
 {¶ 33} In their third and fourth cross-assignments of error, appellees contend that the trial court erred in granting summary judgment in favor of appellants on appellants' conversion claim and on appellees' counterclaims for violations of R.C. 2323.51, violations of Civ.R. 11, and slander of title because no party moved for summary judgment on those claims. Civ.R. 56 does not authorize a court to enter summary judgment in favor of a party who has not moved for summary judgment.Marshall v. Aaron (1984), 15 Ohio St.3d 48, syllabus. Nor may a trial court grant summary judgment on a claim upon which summary judgment has not been requested. See Bowen v. Kil-Kare, Inc. (1992),63 Ohio St.3d 84, 94 (reversing entry of summary judgment on a claim for negligent infliction of emotional distress where the parties had not moved for summary judgment on that claim); Carcorp, Inc. v. ChesrownOldsmobile-GMC Truck, Inc., Franklin App. No. 06AP-329, 2007-Ohio-380, at ¶ 15.
 {¶ 34} Review of appellants' motion for summary judgment reveals no discussion of appellants' claim for conversion or of appellees' counterclaims. Moreover, in their motion, appellants requested only an order of specific performance from the trial court. *Page 21 
Conspicuously absent from appellants' motion is any request for judgment on their conversion claim or for dismissal of appellees' counterclaims. Appellants contend that the evidence submitted in support of their motion for summary judgment demonstrated facts justifying judgment on their conversion claim and on appellees' counterclaims, but they point to no request for summary judgment on such claims. Appellants' failure to move for summary judgment on such claims denied appellees a meaningful opportunity to object to the entry of summary judgment. SeeMitseff v. Wheeler (1988), 38 Ohio St.3d 112, syllabus ("[a] party seeking summary judgment must specifically delineate the basis upon which summary judgment is sought in order to allow the opposing party a meaningful opportunity to respond"). Based on Marshall andBowen, we find that the trial court erred in entering summary judgment in favor of appellants on their conversion claim and on appellees' counterclaims for violations of R.C. 2323.51, violations of Civ.R. 11, and slander of title, where appellants did not move for summary judgment on such claims. Therefore, we sustain appellees' third and fourth cross-assignments of error.
 {¶ 35} For the foregoing reasons, we overrule appellants' assignments of error, overrule as moot appellees' first and second cross-assignments of error, and sustain appellees' third and fourth cross-assignments of error. We, therefore, affirm the judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of appellees on appellants' claims for breach of contract, specific performance, and injunctive relief, and reverse the trial court's judgment granting summary judgment in favor of appellants on appellants' conversion claim and on appellees' counterclaims for violations of R.C. 2323.51, violations of Civ.R. 11, and slander of title. Finally, we *Page 22 
remand this matter to the trial court for further proceedings in accordance with this opinion and the law.
Judgment affirmed in part, reversed in part, and cause remanded.
TYACK and DESHLER, JJ., concur.
DESHLER, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] On November 11, 2005, the parties entered into an agreed preliminary injunction, whereby appellees agreed to preserve the status of the real property, pending the outcome of this action.
[2] Defendant Oak Hill Banks did not file an answer to appellants' complaint.
[3] Appelles also argued that Kellie Auto's claims failed because it was not a party to the Purchase Contract; that appellants' claims for breach of contract, specific performance, and injunctive relief were limited to Rahbars Ritters because the Ritters dealt with Said exclusively in their capacity as members of Rahbars Ritters; and that appellants' claims of fraud and promissory estoppel were limited to the Ritters, the only appellees that communicated with, and thus made representations to, Said. *Page 1